UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,             CASE NUMBER: 07-20309
                                               HONORABLE VICTORIA A. ROBERTS

v.

CORDELL SAIN, a/k/a
 "Myron Malone",

                Defendant.

_____/


**ORDER ON DEFENDANT'S MOTIONS IN LIMINE**


**I.      INTRODUCTION**

      Defendant Cordell Sain filed three Motions in Limine to Prevent Introduction at Trial of (1) his use of an alias during arrest (Doc. #204); (2) a U-Haul key seized from his person (Doc. #205); and (3) his conviction in June 2008 on drug distribution and weapons possession charges (Doc. #206).  The Court reviewed the papers filed and heard oral argument on January 15, 2008.  For the following reasons, the Court:

      1.     **DENIES** Defendant's motion to exclude past aliases;

      2.     **DENIES** Defendant's motion to exclude the U-Haul key; and

      3.     **GRANTS** his motion to exclude the circumstances surrounding his arrest on November 11, 2007 as to Count One, and **DEFERS** a decision as to Count Two, unless Defendant invokes a "merely present" defense.  Then, the Court will reconsider the ruling on this particular motion.

1

II.     **BACKGROUND**

On June 5, 2007, agents working for the Drug Enforcement Administration

("DEA"), the Federal Bureau of Investigation ("FBI") and the Combined Hotel Interdiction

Enforcement Force ("CHIEF") observed a succession of vehicles pulling into the parking

lot of a small industrial complex in New Boston, Michigan.  Among them was a black

box-truck, which arrived at 11:52 AM, carrying Defendant as passenger.  The occupants

entered the offices of a company named "European Marble and Granite," which

occupies Suite 100 of the complex.  The premises of Suite 100 include an overhead bay

door and a warehouse.

Shortly thereafter, a semi-tractor trailer pulled into the parking lot and backed up

so that its rear was inside Suite 100's warehouse.  After an hour, the semi-tractor trailer

departed, and the black box-truck in which Defendant arrived backed up against the

overhead bay door.  A group of eight men, including Defendant, loaded bales of

marijuana from inside the warehouse into the box-truck.  Agents arrested the men and

seized 195 bales of marijuana, weighing over a ton altogether.  At the time of his arrest,

Defendant identified himself to agents as "Myron Malone."  Among his belongings,

agents found the key to a U-Haul truck rented the day before under the name

"Rasheeda Powell;" they also found a cell phone in the black box-truck.

Defendant was arraigned on June 6, 2007, and released on $10,000 bond.  On

November 6, 2007, a Grand Jury returned a Second Superseding Indictment (Doc.

#110) charging Defendant and ten others with conspiracy to possess with intent to

distribute and to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and

possession with intent to distribute marijuana and aiding and abetting in violation of 21

2

U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Of 11 co-defendants, six entered guilty pleas, three were tried and found guilty, and one was acquitted.  Defendant's trial is scheduled to begin January 21, 2009.

On November 11, 2007, Defendant was arrested with: (1) 28 vials of marijuana, packaged for distribution, the equivalent of 14.8 grams; (2) a digital scale, and (3) a 9mm semi-automatic handgun.  Defendant was on bond at the time of this arrest, which occurred five days after the Second Superseding Indictment was filed.  Defendant was tried and convicted on June 4, 2008, of possession with intent to distribute a controlled substance, felon in possession of a firearm, and possession of a firearm in furtherance of the possession of a controlled substance with intent to distribute.  *U.S. v. Sain*, No. 07-20607 (E.D. Mich. Nov. 10, 2008) (Zatkoff, J.).

Defendant moves to suppress evidence of his use of an alias, the U-Haul key, and details leading to his November 11, 2007 arrest.

## III.   ANALYSIS

In deciding whether to admit a piece of evidence, the Court proceeds from the basic principle that "[a]ll relevant evidence is admissible," unless otherwise provided, and "[e]vidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Evidence is "relevant" if it has:

> any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Even if it is relevant, however, evidence may still be excluded if:

> its probative value is substantially outweighed by the danger of unfair

3

> prejudice, confusion of the issues, or misleading the jury, or by
> considerations of undue delay, waste of time, or needless presentation of
> cumulative evidence.

Fed. R. Evid. 403.  When performing a Rule 403 analysis, the trial court considers the evidence in "the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect."  *U.S. v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (*quoting U.S. v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984)).  "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis."  *U.S. v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (*quoting Bonds*, 12 F.3d at 567 (internal quotation and citation omitted)).  On appeal, a district court's evidentiary rulings on Rule 401 relevance and Rule 403 admissibility are reviewed for abuse of discretion.  *Zamlen v. Cleveland*, 906 F.2d 209, 215-16 (6th Cir. 1990) (*citing Conklin v. Lovely*, 834 F.2d 543, 551 (6th Cir. 1987)).

In order to convict Defendant under Count One, conspiracy to possess with intent to distribute and to distribute marijuana, the Government must prove, beyond a reasonable doubt, that (1) two or more persons conspired, or agreed, to commit the crime of distribution and possession with intent to distribute 1,000 kilograms or more of a mixture or substance containing marijuana, (2) Defendant knew the conspiracy's main purpose, and that he voluntarily joined it intending to help advance or achieve its goals, and (3) one or more overt acts occurred for the purpose of advancing or helping the conspiracy.  *See* 6th Cir. Crim. Pattern Jury Instructions 3.02-03 (2007).

Count Two, possession with intent to distribute marijuana, is also the underlying offense of Count One.  In order to convict Defendant on this count, the Government

4

must prove, beyond a reasonable doubt, that (1) Defendant knowingly possessed the controlled substance described in the Second Superseding Indictment, (2) Defendant knew that the substance was a controlled substance, and (3) Defendant intended to distribute the controlled substance.  *See* 2 Devitt, Blackmar & O'Malley, *Federal Jury Practice and Instructions* § 54.07 (4th ed. 1990).

### A.    Use of Alias

The Government intends to supply evidence that, at the time of his arrest, Defendant identified himself as "Myron Malone."  Defendant argues that Sixth Circuit precedent, specifically *U.S. v. Wilkerson*, 456 F.2d 57 (6th Cir. 1972), cautions against admission of aliases by the prosecution.

In *Wilkerson*, the prosecuting attorney read the defendants' aliases to the jury during his opening statement, and remarked during closing arguments that people with nothing to hide do not use aliases.  *Id.* at 59.  The Sixth Circuit held that the prosecutor acted inappropriately, stating:

> We strongly disapprove the practice of including aliases in indictments.
> . . .  *Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial.*

*Id.* (emphasis added).

Defendant's reading of *Wilkerson* is too broad: the Sixth Circuit does not condemn the use of alias evidence in all circumstances, but only when doing so bears no relevance to the case.  In *Wilkerson*, the prosecution did not offer any proof of the defendant's aliases, and the court concluded that "the principal use to which the aliases were put was to indicate to the jury that people who use aliases are inherently suspect."

5

*Id.*

In fact, as the *Wilkerson* court acknowledged, the use of an alias, when proven at trial, may be relevant in some cases.  The Sixth Circuit has joined other Circuits in holding that a defendant's use of an alias may be relevant to show consciousness of guilt.  *See U.S. v. Okayfor*, 996 F.2d 116, 120 (6th Cir. 1993) (proof of possession of a counterfeit resident alien card is "analogous to evidence of use of an alias.") (*citing U.S. v. Stowell*, 947 F.2d 1251, 1255 (5th Cir. 1991) ("a defendant's attempt to conceal his identity from an arresting officer by the use of an alias is relevant as proof of consciousness of guilt.") (internal quotation omitted)); *accord U.S. v. Clark*, 184 F.3d 858, 870 (D.C. Cir. 1999); *U.S. v. Glass*, 128 F.3d 1398, 1408 (10th Cir. 1997); *Levy v. Gozlon-Peretz*, 865 F.2d 551, 558 (3d Cir. 1989) (en banc); *U.S. v. Kalish*, 690 F.2d 1144, 1155 (5th Cir. 1982); *U.S. v. Boyle*, 675 F.2d 430, 432 (1st Cir. 1982).

The fact that Defendant gave a false identity when he was arrested by the police in proximity to over a ton of marijuana is clearly relevant to show knowledge and consciousness of guilt.  Furthermore, introduction of the evidence will not cause unfair prejudice, or confuse or mislead the jury.  Evidence of Defendant's use of an alias during his arrest is admissible.  The Court notes, too, Defendant is identified by his alias throughout the Second Superseding Indictment.

### B.    Possession of U-Haul Key

When searching Defendant at the scene of his arrest, agents found a key bearing a U-Haul tag.  They tracked the key to a rental truck slightly smaller in size to the black box-truck into which the co-conspirators loaded the marijuana.  The truck was rented on June 4, 2007, to Rasheeda Powell, an acquaintance of Defendant's who was not

6

charged and apparently not involved in this case. The truck was due back at 9:30 on the morning of Defendant's arrest. The Government represents that Defendant had responsibility to return the truck and failed to do so.

The Government submits this key is relevant to prove Defendant's involvement in the conspiracy and his intent to possess marijuana for distribution purposes. The Government also argues the key is circumstantial evidence of Defendant's intent to transport a portion of the marijuana later that same day.

Defendant responds that the key should be excluded because there is no evidence to show he ever used it for an illegal purpose. At the hearing, the defense explained that on June 4, Defendant bought Ms. Powell furniture for which he paid cash, and helped her move it into her house using the truck. Defendant offered to take the truck back to the rental agency.

The Court is inclined to admit the U-Haul key into evidence. In particular, the fact that Defendant failed to return the truck by 9:30 AM on June 5 seems relevant to his intent and his plans for later that day. Defendant's argument that he had a legitimate purpose for possession of the key is relevant, admissible evidence as well. However, his arguments against admission of the key go to weight, not admissibility.

The Court admits the U-Haul key into evidence, but emphasizes it may reconsider this decision depending on trial proceedings and whether further information about the truck's location, its return time and Ms. Powell's furniture becomes available.

## C.    Prior Conviction

Defendant seeks to exclude evidence of his November 11, 2007 arrest and subsequent conviction for possession with intent to distribute marijuana, felon in

7

possession of a firearm, and possession of a firearm in furtherance of the possession of marijuana with intent to distribute.  The Government argues that Defendant's conviction is admissible either as (1) evidence of drug trafficking in furtherance of the charged conspiracy; (2) similar acts evidence under Fed. R. Evid. 404(b); or (3) evidence to impeach Defendant's credibility under Fed. R. Evid. 609(a).  The Court considers each argument separately.  The Court notes that the June 4, 2008 conviction would come into evidence only if Defendant took the witness stand.  For purposes of Defendant's motion, the Court considers only the facts and circumstances surrounding his arrest on November 11, 2007.

### 1.    Admission as Part of the Charged Conspiracy

The Government contends that Defendant's arrest is admissible as part of the res gestae of the charged conspiracy.  It argues that the offense itself reflects Defendant's continued involvement in the conspiracy because it involves distributing the same drug -- marijuana -- within roughly the same time frame.  In part, the Government relies on the language of the Second Superseding Indictment, which alleges the conspiracy ran "from some time in September, 2000, continuing until on or about June 5, 2007, *said dates being approximate*."  (Emphasis added).

Defendant counters that to admit the November offense into evidence constitutes an improper variance or a constructive amendment of the Second Superseding Indictment.  He claims this was an isolated incident which occurred beyond the time-frame of the charged conspiracy, and emphasizes that the quantity of drugs involved was "relatively negligible" compared to the "1,000 kilograms or more" alleged here.

The Supreme Court has repeatedly held that "the constitutional rights of an

8

accused are violated when a modification at trial acts to broaden the charge contained

in an indictment." *U.S. v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989) (*citing Ex parte*

*Bain*, 121 U.S. 1, 10 (1887); *Stirone v. U.S.*, 361 U.S. 212, 215-16 (1960)).  An

indictment may be altered by an amendment, a variance, or a hybrid form called a

constructive amendment.

> "An amendment of the indictment occurs when the charging terms of the
> indictment are altered, either literally or in effect, by prosecutor or court
> after the grand jury has last passed upon them.  A variance occurs when
> the charging terms of an indictment are left unaltered, but the evidence
> offered at trial proves facts materially different from those alleged in the
> indictment."  An amendment is considered per se prejudicial and warrants
> reversal of a conviction, whereas a variance is not reversible error unless
> the accused has proved a prejudicial effect upon his defense.

*Id.* (*quoting Gaither v. U.S.*, 413 F.2d 1061, 1071 (D.C. Cir. 1969) (footnotes omitted))

(other citations omitted).  An amendment to an indictment violates the Fifth

Amendment's grand jury requirement, while a variance contravenes a defendant's right

under the Sixth Amendment to be "informed of the nature and cause of the accusation."

*Id.*

Under certain circumstances, a variance may be so egregious as to effectively –

though not literally – alter the terms of the indictment.  These "constructive

amendments" occur

> when the terms of an indictment are in effect altered by the presentation of
> evidence and jury instructions which so modify essential elements of the
> offense charged that there is a substantial likelihood that the defendant
> may have been convicted of an offense other than that charged in the
> indictment.

*U.S. v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986).  Like amendments, constructive

amendments are considered prejudicial per se.  *U.S. v. Beeler*, 587 F.2d 340, 342 (6th

Cir. 1978).

The difference between variance and constructive amendment is best explained by way of example. In *U.S. v. Nance*, the indictment charged the defendant with felony possession of a firearm "on or about December 12, 2003." 481 F.3d 882, 884 (6th Cir. 2007). The jury heard evidence that when he was arrested on December 12, the defendant told officers which key would open the safe containing the firearm. *Id.* at 885. In addition, the prosecution presented a statement, made during his arrest, in which the defendant admitted placing the gun in the safe on December 8, four days earlier. *Id.* The defense sought to exclude the statement, but the district court opined that the two dates were close enough to fall within the "on or about" language of the indictment. On appeal, the Sixth Circuit upheld the trial court's decision, holding that evidence of possession on December 8 was relevant to prove that the defendant had access to, and control over, the weapon on December 12. *Id.* at 886. In a lengthy footnote, however, the court addressed what it termed "an apparent misconception" about the government's burden of proof.

> The government's obligation was to prove the particular possession charged, not some earlier occasion of possession. The 'on or about' language permits the jury to conclude that the offense charged occurred on some date reasonably close to the one contained in the indictment, but does not permit conviction of an uncharged offense that occurred in close temporal proximity to the charged offense. *And the admission of the December 8 evidence was proper because it related to elements of the charged offense, not because the government was permitted to prove an instance of possession other than that charged.*

*Id.* at n.2 (emphasis added).

Similar to *Nance*, in *U.S. v. Ford*, the defendant was indicted for felony possession of a handgun "on or about September 28, 1987." 872 F.2d at 1233. The

10

prosecution presented evidence that the defendant purchased that very firearm in November 1986, when he had already accumulated several felony convictions, and also that he accidently shot himself in August 1987.  *Id.*  In response to a question from the deliberating jury, the trial court explained that, if the jury found that the defendant possessed the weapon at any time between November 1986 and September 1987, the indictment would be satisfied.  Thus instructed, the jury returned a guilty verdict.  *Id.*

On appeal, the Sixth Circuit reversed, holding that "the essential element of possession was so modified . . . as to amount to a constructive amendment of . . . the indictment."  *Id.* at 1236.  The court also clarified the "reasonably near" standard, explaining:

> When "on or about" language is used in an indictment, proof of the exact date of an offense is not required as long as a date reasonably near that named in the indictment is established.  . . .  [W]e believe the "reasonably near" rule . . . contemplates *a single act the exact date of which is not precisely known by the grand jury* and, therefore, does not need to be proved with exactitude.  Here, the November 1986 (purchase), August 1987 (incident on highway), and September 1987 (domestic violence) events involved substantially separate incidents of alleged possession.

*Id.* (emphasis added).

Comparing *Nance* and *Ford* to the facts of this case, the Court holds that admitting Defendant's conviction as evidence of the charged conspiracy would constitute either a prejudicial variance or a constructive amendment.  First, although there is no strict rule as to when two dates cease being "reasonably near" to one another, the five-month differential between the indictment time-frame and Defendant's November 2007 arrest is, by Sixth Circuit standards, too great to qualify as a variance.  *Compare Nance*, 481 F.3d at 885 (four days variance held immaterial), *and U.S. v.*

*Manning*, 142 F.3d 336, 339-40 (6th Cir. 1998) (evidence of a meeting 33 days before the date alleged in the indictment did not constitute a variance), *with Ford*, 872 F.2d at 1236 (11 months held excessive).  Furthermore, there is no indication that both incidents were part of a "single act."  *Ford*, 872 F.2d at 1236.

The fact that the November 2007 offense occurred five months after the time-frame alleged in the indictment also argues against its admission.  The Government correctly notes that evidence of acts committed after a charged crime can sometimes be admitted without creating a fatal variance, or on a res gestae theory.  In *U.S. v. Zelinka*, the prosecution presented evidence of the defendant's involvement in cocaine transactions a few days after the end of the cocaine conspiracy for which he was indicted.  862 F.2d 92, 94 (6th Cir. 1988).  The Sixth Circuit ruled the evidence admissible, because it "linked [the defendant] with a member of the conspiracy as charged, it involved cocaine, and it related to an attempt by some of the conspirators to regroup after the FBI had 'raided' the trailer of one of the original conspirators."  *Id.* at 97.  Similarly, in *U.S. v. Vincent*, the defendant was charged with making threats on the President's life during his arrest by federal agents, and the prosecution introduced evidence that he made similar statements later the same day, in the presence of other witnesses.  681 F.2d 462, 463-64 (6th Cir. 1982).  The Sixth Circuit held the later statements could be admitted on res gestae grounds, because they were "'evidence of other crimes, closely related in both time and nature to the crime charged,' which establish 'the common scheme or history of the crime, of which the other crimes constitute a part.'"  *Id.* at 465 (*quoting U.S. v. McDaniel*, 574 F.2d 1224, 1227 (5th Cir. 1978)).

12

*Zelinka* and *Vincent* are inapposite for several reasons.  First, both deal with evidence of acts committed within a few hours or days of the charged offense, as opposed to several months.  Second, except for the fact that Defendant's offenses both involved trafficking marijuana, the Government has not presented evidence that the November 2007 offense was a continuation of the charged conspiracy, or an attempt by its members to regroup after the June raid.  Finally, for the same reasons, the November 2007 offense cannot be admitted as res gestae evidence.  *See U.S. v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (proper res gestae evidence "consists of those other acts that are inextricably intertwined with the charged offense or those acts" and "has a causal, temporal or spatial connection with the charged offense.") (citations omitted).

Evidence of the November 2007 offense may not be admitted as evidence of the charged conspiracy; it could result in Defendant being "convicted of an offense other than that charged by the grand jury.*" Beeler*, 587 F.2d at 342 (*quoting U.S. v. Somers*, 496 F.2d 723, 744 (3d Cir. 1974)).

### 2.    Admission under Rule 404(b)

The Government asserts that Defendant's November 2007 offense is admissible as similar acts evidence under Fed. R. Evid. 404(b) for both counts.  Notice has been given.  Defendant argues the November 2007 offense is unrelated to the charges against him and would be used by the jury as evidence of his character as a drug dealer.

Rule 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the

13

> character of a person in order to show action in conformity therewith.  It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident, provided that upon request by the accused, the
> prosecution in a criminal case shall provide reasonable notice in advance
> of trial . . .

Rule 404(b) also permits using similar acts evidence to prove other facts than those it

lists, such as the existence of a common scheme or plan.  *See Huddleston v. U.S.*, 485

U.S. 681, 688-89 (1988) ("Congress was not nearly so concerned with the potential

prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would

not be placed on the admission of such evidence."); *U.S. v. Blankenship*, 775 F.2d 735,

739 (6th Cir. 1985) (Rule 404(b) is one of "inclusion rather than exclusion").  Given the

facts of this case, it is also worth noting that "acts prior to and subsequent to the offense

charged are admissible pursuant to Rule 404(b)."  *U.S. v. Perry*, 438 F.3d 642, 647 n.2

(6th Cir. 2006) (*citing U.S. v. Pollard*, 778 F.2d 1177, 1179-80 (6th Cir. 1985)).

Over a number of cases, the Sixth Circuit gradually elaborated a multi-step

process to determine the admissibility of Rule 404(b) evidence.  The initial inquiry is to

ensure that there is sufficient evidence for the jury to find, by a preponderance of the

evidence, that the prior act occurred.  *U.S. v. Gessa*, 971 F.2d 1257, 1261-62 (6th Cir.

1992) (en banc); *Huddleston*, 485 U.S. at 690.  Here, since Defendant was convicted for

his actions in November 2007, the sufficiency of the evidence is not in doubt.

Next, the district court must assess whether the evidence is probative of a

material issue other than character.  *Huddleston*, 485 U.S. at 686.  The Sixth Circuit

explains that, upon objection from the defendant, the government must identify "the

*specific* purpose . . . for which the government offers the evidence. . ."  *U.S. v.*

14

*Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996) (emphasis in original).  Then, the court must "determine whether the identified purpose . . . is 'material'; that is, whether it is 'in issue' in the case."  *Id.* at 1076-77.

If the evidence is offered for a proper purpose, the next step is to determine if it is relevant.  This requires finding that "the tendered evidence relates to a matter that is 'in issue' in the case on trial."  *U.S. v. Bakke*, 942 F.2d 977, 982 (6th Cir. 1991) (*citing Blankenship*, 775 F.2d at 739).  The Sixth Circuit holds that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise."  *U.S. v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999) (*citing U.S. v. Johnson*, 27 F.3d 1186, 1192-93 (6th Cir. 1994), *cert. denied*, 513 U.S. 1115 (1995)).

Once the evidence's relevance is established, the trial court must apply a standard Rule 403 balancing test to determine whether its probative value is substantially outweighed by the danger of unfair prejudice.  *Huddleston*, 485 U.S. at 688; *Merriweather*, 78 F.3d at 1077.  The Sixth Circuit interprets "unfair prejudice" to mean "the undue tendency to suggest a decision based on improper considerations; it does not mean the damage to a defendant's case that results from legitimate probative force of the evidence."  *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) (internal quotation omitted).

Finally, if the requirements of Rule 403 are met, the district court must, "'clearly, simply and correctly' instruct the jury as to the *specific* purpose for which they may consider the evidence."  *Merriweather, 78 F3d at 1077* (*quoting Johnson*, 27 F.3d at 1193 (emphasis in original)).  In *Johnson*, the Sixth Circuit emphasized the critical

15

nature of this last step.

> To apply Rule 404(b) fairly, the district court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b).

27 F.3d at 1194.

The Sixth Circuit gives district courts broad discretion in determining whether similar acts evidence is admissible against a criminal defendant. *U.S. v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007); *U.S. v. Ebens*, 800 F.2d 1422, 1433 (6th Cir. 1986).

> [W]e first review for clear error the district court's factual determination that the "other . . . acts" occurred.  Second, we examine de novo the district court's legal determination that the evidence was admissible for a legitimate purpose.  Finally, we review for abuse of discretion the district court's determination that the probative value of the other acts evidence is not substantially outweighed by its unfairly prejudicial effect.

*Merriweather*, 78 F.3d at 1074; (*citing Johnson, 27 F3d at1190, Gessa*, 971 F.2d at 1261-62).

The Government's brief cites several purposes for which Defendant's prior conviction may be offered, but only two are addressed in any depth: proving specific intent and refuting claims that Defendant was "merely there" on the day of the raid.  At the hearing, the Government also focused on these arguments.  The Court need only address those elements for which the Government articulates a theory of admissibility. *See Zelinka*, 862 F.2d at 99 (stating that it is not sufficient to "merely parrot" the language of Rule 404(b) without explanation of how the evidence relates to any matter in issue).  Therefore, the Court considers whether the prior conviction is admissible to: (1) prove intent; or (2) rebut a "merely there" defense.

16

### a.    Use of Prior Conviction to Prove Intent

The Government argues that the November 2007 offense is admissible as evidence of Defendant's intent to engage in the conspiracy charged by Count One, and his intent to possess and distribute marijuana, as alleged in Count Two.  In the Sixth Circuit, conspiracy and possession with intent to distribute are both specific intent crimes.  Since Defendant's intent will be "in issue" under both counts, it is a valid purpose for which to use Rule 404(b) evidence.

To obtain a conviction for conspiracy, the government must prove that the defendant acted with the specific intent of furthering the "common unlawful objective of the conspiracy."  *Merriweather*, 78 F.3d at 1078 (*quoting U.S. v. Mitchell*, 49 F.3d 769, 775 (D.C. Cir. 1995)) (other internal quotations omitted); *see also* 6th Cir. Crim. Pattern Jury Instruction 3.03 (2007) (stating that to establish that a defendant "knowingly and voluntarily" joined a conspiracy, "the government must prove that he knew the conspiracy's main purpose, and that he voluntarily joined it intending to help advance or achieve its goals.").  Like conspiracy, possession with intent to distribute is also a specific intent crime.  *U.S. v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008) (*citing U.S. v. Lattner*, 385 F.3d 947, 957 (6th Cir. 2004) ("when a defendant is charged with a specific intent crime, such as possession with intent to distribute, 404(b) evidence is admissible to prove intent") (citation omitted)); *U.S. v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998) (same).

Having established the purpose and materiality of Defendant's prior conviction, the Court turns to the heart of the analysis: whether it is relevant and not unfairly prejudicial.  The fact that evidence simply relates to a matter "in issue" does not make it

17

automatically relevant; in addition, it must "deal with conduct substantially similar and reasonably near in time" to the charged offenses. *U.S. v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004) (*quoting U.S v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991) (internal quotations omitted)). Relevant evidence may be excluded if its probative value is "substantially outweighed" by the danger of unfair prejudice to the defendant. Fed. R. Evid. 403.

### i.    Count One: Conspiracy to Possess with Intent to Distribute

The Sixth Circuit holds that "[t]o show 'intent' with evidence of other misconduct, there must be a substantial similarity between the offenses charged in the indictment and the prior misconduct." *U.S. v. Ring*, 513 F.2d 1001, 1004 (6th Cir. 1975). There is a wealth of Sixth Circuit precedent on the admissibility of prior narcotics transactions to prove intent to participate in a drug-related conspiracy. Three cases are particularly relevant to the Court's analysis.

In *U.S. v. Merriweather*, the defendant was accused of conspiring to distribute and to possess with intent to distribute cocaine. 78 F.3d at 1073. The trial court admitted into evidence tapes of telephone conversations the defendant had with (1) members of the charged conspiracy, and (2) members of another, concurrent conspiracy for which he was separately indicted. *Id.* at 1073-74. The defendant appealed the admission of the second group of tapes to the Sixth Circuit. The court acknowledged that the second group of tapes was admissible for the legitimate purpose of proving the defendant's specific intent to distribute and possess cocaine. *Id.* at 1078. However, the court concluded that the potential for unfair prejudice outweighed the

18

evidence's probative value.

> The danger was very great that the jurors, rather than consider the
> [second group of] conversations for the narrow, precise, legitimate
> purpose of proving Merriweather's specific intent to distribute and possess
> cocaine, would far more likely infer that just as Merriweather conspired
> with [members of the second conspiracy], so he conspired with [members
> of the charged conspiracy]--the very inference that Rule 404(b) forbids.

*Id.* at 1079.  Furthermore, the court found that the government had "a number of means

available" to prove specific intent; therefore its legitimate need to introduce the second

group of conversations was slight, compared to the serious risk of unfair prejudice.  *Id.*

In *U.S. v. Bakke*, the defendant was charged in Michigan with conspiracy to

distribute large quantities of marijuana between December 1983 and October 1987.

942 F.2d at 978.  The trial court admitted evidence that, in April 1988, the defendant

was arrested in New Jersey, in a car containing $428,000 in cash and 200 pounds of

marijuana.  *Id.* at 978.  The arresting officer testified that the defendant told him the

money was part of the proceeds from the sale of 465 pounds of marijuana, and that he

and the car's driver were heading to Michigan with the remaining 200 pounds.  *Id.* at

979.  The Sixth Circuit overruled the trial court, holding that the government had not

shown any relationship between the conspiracy and the defendant's arrest in New

Jersey, and therefore the evidence failed the relevancy test.  *Id.* at 982-83.  As the court

explained,

> The fact that [the defendant] was arrested in a distant state some six
> months after the end of the charged conspiracy and incriminated himself
> in a totally unrelated drug transaction only demonstrated that he was a
> drug dealer in 1988.  It did not demonstrate or tend to show, as claimed by
> the government, that he must have "learned the ropes" of the marijuana
> trade by participating in the [charged] conspiracy.  . . .  Nothing connected
> the events culminating in his 1988 New Jersey arrest with his, or any other
> alleged co-conspirator's, involvement in the . . . conspiracy charged in the

19

indictment.

*Id.* at 983.

The *Bakke* court analogized that case to *U.S. v. Zelinka*, where the defendant was charged with conspiring to distribute cocaine between March and July 1985, and the district court admitted evidence that he was arrested in December 1986 with some cocaine and several clear plastic bags.  862 F.2d at 93.  As in *Bakke*, the Sixth Circuit held that evidence of possession with intent to distribute in December 1986 was not relevant to prove the defendant's involvement in the charged conspiracy, stating: "The evidence related to a time that was remote from the period of the conspiracy and involved none of the other conspirators."  *Id.* at 99.

Based on this precedent, the issue posed by Defendant's not guilty plea is "not whether he was a user or distributor, but whether he was a member of the conspiracy." *Zelinka*, 862 F.2d at 99; *accord Bakke*, 942 F.2d at 983.  There is no evidence from which to infer that any of Defendant's co-conspirators were involved in the November offense.  The only apparent connection – both offenses involved the distribution of marijuana – does not constitute evidence of intent to participate in the charged conspiracy.  Finally, although Rule 404(b) evidence, does not have to be identical to the crime charged, the five-month interval between both offenses increases the need to find "substantial similarity" between them.  *See U.S. v. Haywood*, 280 F.3d 715, 722 (6th Cir. 2002) ("although [a] nearly five month gap . . . is not so lengthy a time span as to render 'other acts' evidence irrelevant under all circumstances, it is of sufficient length to require a greater similarity between the two events than is present in the case before us.") (*citing U.S. v. Ruiz*, 178 F.3d 877, 880 (7th Cir. 1999) (stating that "if the acts are

20

similar in nature to those of the charged crime, even a substantial gap in time may not destroy the relevance of the acts to the determination of the defendant's intent in committing the charged conduct")).

The Court finds that the Government has not met its burden to prove substantial similarity between the conspiracy charged here and Defendants actions in November, 2007.  Then, he was caught with nearly insubstantial amounts of marijuana compared to the ton charged in this conspiracy.  He was found in what has been described in an abandoned house - certainly not the sophisticated drug conspiracy allegedly engineered on June 5, 2007.

Because the Government fails to establish substantial temporal or factual similarity between the charged conspiracy and Defendant's subsequent conviction for possession with intent to distribute,  "[t]his evidence fail[s] the 'threshold inquiry' -- it [is] not 'probative of a material issue other than character."  *Zelinka*, 862 F.2d at 99 (*quoting Huddleston*, 485 U.S. at 686).  This evidence will not be admissible to prove the intent element of Count One.

### ii.    Count Two: Possession with Intent to Distribute

To be relevant to prove intent, the other bad act must be "substantially similar" to the offense charged in the indictment.  *Ring*, 513 F.3d at 1004.  Here, Defendant's November, 2007 offense resulted in his conviction for possession with intent to distribute marijuana, the same charge against him under Count Two.  Thus, it is relevant to prove Defendant's intent on that count.

The final analysis is to determine whether the evidence's probative value is "substantially outweighed by the danger of unfair prejudice" to Defendant.  Fed. R. Evid.

21

403.  The Sixth Circuit holds that "the district court should consider the government's alternative sources of proving intent when weighing the probative value of other acts evidence."  *U.S. v. Bell*, 516 F.3d 432, 446 (6th Cir. 2008) (*citing Merriweather*, 78 F.3d at 1078-79 ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof.") (other citations omitted)).

Defendant's prior conviction is probative of his willingness and intent to possess marijuana for distribution purposes; however, the Court believes that the difference in quantities involved – 14.8 grams in one instance, over one ton in the other –  creates a substantial danger of unfair prejudice.  Informing jurors of a defendant's conviction always poses the danger that they will identify him as a criminal who "did it once, and therefore is likely to do it again."  However, here, the inference would be that because Defendant possessed 14.8 grams of marijuana in November, he just as likely intended to possess one ton in June.  In other circumstances, this problem may be mitigated by an instruction from the court.  Even with proper instruction, the potential for confusion, misuse, and undue prejudice is too great.

Defendant's conviction for possessing with intent to distribute in November 2007 is not admissible to prove his intent under Count Two of the indictment.  However, this does not mean that this evidence is not admissible under any circumstances.

### b.    Use of Prior Conviction to Refute "Merely There" Defense

A trial court considering whether to admit Rule 404(b) evidence must be mindful of the fact that its decision may be contingent on what happens at trial.  As the Sixth Circuit explains,

> whether 404(b) evidence is admissible for a particular purpose will
> sometimes be unclear until late in the trial because whether a fact is "in
> issue" often depends on the defendant's theory and the proofs as they
> develop.  Nevertheless, the government's purpose in introducing the
> evidence must be to prove a fact that the defendant has placed, or
> conceivably will place, in issue, or a fact that the statutory elements
> obligate the government to prove.

*Merriweather*, 78 F.3d at 1076.  Defendant's stated intent to argue that he was "merely there" on the day of his arrest is an example of a future development which might render evidence of prior acts admissible.

The Government argues that it should be able to use the prior conviction as evidence if, during trial, Defendant claims that he was "merely there" or a "victim of circumstances."

The Sixth Circuit encountered this situation in *U.S. v. Acosta-Cazares*, in which the defendant was accused of conspiring to possess and distribute cocaine, and possessing cocaine with intent to distribute.  878 F.2d 945, 946 (6th Cir. 1989).  Before trial, the defendant moved for the government to disclose any Rule 404(b) evidence it intended to present; the government said it had no such evidence, and the district court overruled the motion as moot.  *Id.* at 949.  During opening statements, the prosecutor suggested that the defendant had participated in other drug transactions prior to the time charged in the indictment.  *Id.*  The defense objected, and the court initially held that the government would not be allowed to use evidence of prior bad acts in its case-in-chief.  *Id.*  However, when the defense claimed during opening statements that the defendant was not involved in any conspiracy and was simply a "victim of circumstances," the court reversed its decision, on grounds that the defendant's intent, plan, and knowledge had effectively been placed "in issue."  *Id.*

23

The Sixth Circuit upheld the trial court's decision, holding that the defense's opening statements had raised questions about the defendant's intent, plan, and knowledge regarding the charged conspiracy. *Id.* at 950. The court held the Government was entitled to use the defendant's prior bad acts to refute arguments that he was a "victim of circumstances" as long as the evidence's probative value outweighed its prejudicial effect. *Id.*

As explained above, the probative value of Defendant's prior offense, on its own, is outweighed by its capacity for unfair prejudice. However, if Defendant argues that his presence on the day of the raid was merely an accident, the probative value of his conviction increases, and the prejudice that might result from its admission is correspondingly reduced. The Court is not tying the admission of the prior conviction to Defendant's use of the "merely there" defense, as his counsel suggested during the hearing. However, the Court's duty is to preserve the ability of both parties to present their case.

Depending on the evidence available to the Government, the "merely there" defense may render Defendant's prior conviction sufficiently probative as to outweigh is prejudicial effect and warrant its admission.

### 3.   Admission under Rule 609(a)(1)

The Government argues that, should Defendant elect to testify at trial, his conviction for possession with intent to distribute marijuana should be admitted to impeach his credibility pursuant to Fed. R. Evid. 609(a).

> Rule 609(a)(1) provides that, for impeachment purposes,
> evidence that an accused has been convicted of . . . a crime [punishable
> by death or imprisonment in excess of one year] shall be admitted if the

24

court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

A district court assessing whether to admit a defendant's prior conviction for

impeachment purposes must consider:

(1) The impeachment value of the prior crime.

(2) The point in time of the conviction and the witness' subsequent history.

(3) The similarity between the past crime and the charged crime.

(4) The importance of the defendant's testimony.

(5) The centrality of the credibility issue.

*U.S. v. Moore*, 917 F.2d 215, 234 (6th Cir. 1990) (*citing Gordon v. U.S.*, 383 F.2d 936,

940 (D.C. Cir. 1967) (Burger, J.), *cert. denied*, 390 U.S. 1029 (1968)).  The Sixth Circuit

has "taken notice" of the *Gordon* factors and requires that a district court hold an on-the-

record hearing and explicitly find that the probative value of the evidence substantially

outweighs its prejudicial effect on the defendant.  *Id.* (*citing U.S. v. Mahler*, 579 F.2d

730, 734 (2d Cir. 1978)).  On appeal, the district court's Rule 609(a)(1) determinations

are reviewed for abuse of discretion.  *U.S. v. Meyers*, 952 F.2d 914, 916 (6th Cir. 1992)

(*citing Moore*, 917 F.2d at 234)).

At the hearing, counsel indicated it was very unlikely that Defendant would take

the stand.  Accordingly, the Court declines to consider the issue unless Defendant

indicates his intent to testify.  Since neither party addresses the five *Gordon* factors in

its brief, the Court will hold a hearing on this specific issue if it arises, as required by

*Moore*, 917 F.2d at 234.

## IV.   CONCLUSION

The Court:

25

(1) **DENIES** Defendant's motion to exclude past aliases;

(2) **DENIES** his motion to exclude the U-Haul key;

(3) **GRANTS** his motion to exclude the circumstances surrounding his arrest

on November 11, 2007 as to Count One, and **DEFERS** a decision as to

Count Two, unless Defendant invokes a "merely present" defense.  Then,

the Court will reconsider the ruling on this particular motion.

**IT IS ORDERED.**

   /s/ Victoria A. Roberts        
Victoria A. Roberts
United States District Judge

Dated:  January 16, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on January 16, 2009.

s/Linda Vertriest
Deputy Clerk

26