UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                CASE NUMBER: 07-20309-09
                                      HONORABLE VICTORIA A. ROBERTS

v.

CORDELL SAIN, a/k/a
 "Myron Malone",

                Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION

Defendant Cordell Lenell Sain comes before the Court for sentencing after his conviction for conspiracy to possess and possession with intent to distribute one ton of marijuana. Because the Government filed a sentencing enhancement pursuant to 21 U.S.C. § 851, Defendant faces a statutory minimum of 20 years in prison.

Probation's Pre-Sentence Investigation Report ("PSIR") calculates Defendant's Guideline range to be between 360 months and life, based on a Total Offense Level of 37 and a Criminal History Category of VI. However, Probation believes Defendant's criminal history is overstated.

The Government contends Defendant's Criminal History Category should be III, combined with an Offense Level of 32, for a sentencing range of 151 to 188 months. However, the Government argues the Guideline range is moot, because of the 20-year statutory minimum.

The Court held a hearing on June 30, 2009, at which Defendant asked to be

sentenced below the 20-year minimum.

The Court finds Defendant's Total Offense Level to be 37, his Criminal History Category VI, and his Guideline range 360 months to life.  However, the Court sentences Defendant to 20 years (240 months) detention.

## II.    BACKGROUND

On the morning of June 5, 2007, agents working for the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI") and the Combined Hotel Interdiction Enforcement Force ("CHIEF") observed a succession of vehicles pulling into the parking lot of a small industrial complex in New Boston, Michigan. Agents observed several individuals entering the offices of a company named "European Marble and Granite," which occupies Suite 100 of the complex.  The premises of Suite 100 include a warehouse and an overhead bay door.

At 11:52 AM, a black box-truck carrying Defendant as passenger pulled into the lot and parked near Suite 100; the occupants stayed in the vehicle.  After several minutes, the truck backed up against the overhead bay door, which was closed, and remained there for about a minute.  At 12:05 PM, the truck drove off.

Two minutes later, a semi-trailer truck pulled into the parking lot.  The door to Suite 100's overhead bay opened, and the truck backed up until the trailer's rear was inside the warehouse.  The driver got out, detached the trailer and drove the truck away. Agents heard loud banging and grinding noises coming from the trailer; they surmised that a secret compartment inside the trailer was being accessed.

Around 1:55 PM, the truck returned, followed shortly by the black box-truck with Defendant still as passenger.  The driver re-attached his trailer and drove away, while

2

the box-truck backed into the vacated space in the overhead bay.  Defendant and the driver got out and went to the back of the box-truck.  Agents heard loud banging noises coming from inside the truck.

At 2:10 PM, agents gave the signal to enter.  As they moved in, they observed several men, including Defendant, loading bales of marijuana from inside the warehouse into the box-truck.  The agents arrested eight men and seized 195 bales of marijuana with a combined weight of 2,312 pounds, slightly over a ton.

At the time of his arrest, Defendant identified himself as "Myron Malone."  Among his belongings, agents found a cell phone registered to "Keysha Wilson" and the key to a U-Haul truck rented the day before under the name "Rasheeda Powell."  Defendant was arraigned on June 6, and released on $10,000 bond.

On August 9, 2007, the Government filed a Sentencing Enhancement Information pursuant to 21 U.S.C. § 851 (Doc. #91), notifying Defendant of its intent to seek a 20-year minimum sentence due to his 1999 state conviction for possession with intent to deliver less than 50 grams of cocaine.  *See* 21 U.S.C. § 841(b)(1)(A) (defendant who offends after prior felony drug conviction becomes final shall be sentenced to no less than 20 years and not more than life imprisonment).

On November 6, 2007, a grand jury returned a Second Superseding Indictment (Doc. #110) charging Defendant and ten others with conspiracy to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute marijuana and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Six of the 11 co-defendants entered guilty pleas. Trial for the remaining five defendants was set for July 29, 2008.

3

On November 11 – five days after the Second Superseding Indictment issued and while he was on bond from this Court – Defendant was arrested with the equivalent of 14.8 grams marijuana, packaged for distribution, a digital scale and a 9mm semi-automatic handgun.  He was tried and convicted on June 4, 2008, of possession with intent to distribute marijuana, felony possession of a firearm, and possession of a firearm in furtherance of a drug trafficking offense.  He was sentenced to a total custodial sentence of 168 months.  *See U.S. v. Sain*, No. 07-20607, 2008 WL 4858434, 2008 U.S. Dist. LEXIS 95769 (E.D. Mich. Nov. 10, 2008) (Zatkoff, J.).

Due to this drug conviction, the Government filed a Second Supplemental Sentencing Enhancement Information under 21 U.S.C. § 851 on July 23, 2008 (Doc. #157).  Conviction under this enhancement carries a mandatory life sentence.  *See* 21 U.S.C. § 841(b)(1)(A).

On July 29, the Court began trial proceedings on the five non-pleading co-defendants.  Before jury selection, Defendant moved for his attorney to withdraw, stating:

> My concerns is today I just now found out that under the circumstances of the case that I'm looking at, I didn't know that if I get found guilty it's a mandatory life sentence.

(Tr. July 29, 2008, at 18.)  Defendant explained he met with his attorney only once, the day before trial was to begin, and had serious misgivings about the quality of his representation.  The Court granted Defendant's motion, severed his case, appointed new counsel, and rescheduled his trial for January 2009.

At trial, the Government noted that Defendant had a cell phone registered under a different name, and emphasized this is a common practice among drug dealers.

4

However, the Government produced no evidence that Defendant used the cell phone to call other members of the conspiracy. Keysha Wilson, who was Defendant's girlfriend in June 2007 and his wife by the time of trial, testified that she worked for Verizon Wireless. She explained that Defendant was on her cell phone plan, which allows her to have up to five lines registered under her name.

The Government also argued the U-Haul key found on Defendant was evidence of his intent to transport marijuana with the rental truck. Agents tracked the key to a U-Haul truck slightly smaller than the box-truck used to load the marijuana; however, it was not at or near the scene of the crime. Rasheeda Powell testified that, on June 4, Defendant gave her money to rent the truck for 24 hours and took her furniture shopping. Ms. Powell said they bought several large items for which Defendant paid cash; after transporting the furniture to her apartment, Defendant left with the truck. Ms. Powell testified that later in the evening, she received a call from U-Haul asking when she intended to return the truck. Ms. Powell said she called Defendant to ask about the truck; he told her he lost the keys.

After a three-day trial, the jury convicted Defendant on both counts.

Defendant makes no recommendation concerning the proper calculation of his sentencing range. However, he requests the Court depart or grant a variance, on grounds that the Guidelines overstate his criminal history, and because a Guideline sentence would result in unwarranted disparities with his co-defendants. Defendant also argues that any sentence of 20 years or more would violate the Eighth Amendment of the United States Constitution.

The Government acknowledges that, contrary to its assertion in the second § 851

5

enhancement, it may not seek mandatory life because Defendant's second felony drug

conviction occurred in June 2008, after he committed this offense.  Therefore, the

minimum sentence is 20 years, but Defendant remains eligible for life.  21 U.S.C. §

841(b)(1)(A).  The Government contends the Court lacks discretion to impose less than

the statutory minimum.

## III.   ANALYSIS

A sentencing court bears a statutory duty to fashion a sentence that is "sufficient,

but not greater than necessary," and which appropriately:

> (A) reflects the seriousness of the offense, to promote respect for the law,
>      and to provide just punishment for the offense;
> (B) affords adequate deterrence to criminal conduct;
> (C) protects the public from further crimes of the defendant; and
> (D) provides the defendant with needed educational or vocational training,
>      medical care, or other correctional treatment in the most effective
>      manner.

18 U.S.C. § 3553(a)(2).  The starting point of this analysis should always be the

sentence prescribed by the United States Sentencing Commission Guidelines

("U.S.S.G." or "the Guidelines").  *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("[A]

district court should begin all sentencing proceedings by correctly calculating the

applicable Guidelines range") (*citing Rita v. United States*, 127 S. Ct. 2456, 2480

(2007)).  However, the court may not limit its analysis to the Guidelines; indeed, it "may

not presume that the Guidelines range is reasonable."  *Gall*, 128 S. Ct. at 596.  Rather,

before rendering its decision, the court must consider all the factors enumerated in 18

U.S.C. § 3553(a) to determine if they warrant adjusting the sentence.  *United States v.*

*Booker*, 543 U.S. 220, 245-46 (2005).   In doing so, the court must consider any

argument made by the defendant to reduce his or her sentence:

6

> When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it.  After considering such arguments, the district judge cannot simply rely upon the advisory Guidelines range, but rather "must make an individualized assessment based on the facts presented."  Finally, the district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."

*United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (*quoting Gall*, 128 S. Ct. at 597) (other quotations omitted).

A sentence rendered by a district court must be both procedurally and substantively reasonable.  *Gall*, 128 S. Ct. at 597.  The court commits procedural error if it ignores or incorrectly calculates the Guidelines range, treats the Guidelines as mandatory, disregards the relevant § 3553(a) factors, relies on clearly erroneous facts, or fails to adequately explain its reasons for choosing a particular sentence or deviating from the Guidelines range.  *Id.*; *see also United States v. Dexta*, 470 F.3d 612, 614-15 (6th Cir. 2006) ("[A] sentence is procedurally reasonable if the . . . court addressed the relevant factors in reaching its conclusion.  . . . [P]rocedural reasonableness . . . does not depend on a district court's engaging in a rote listing or some other ritualistic incantation of the relevant § 3553(a) factors") (internal citations omitted).  By contrast, "[a] sentence is substantively unreasonable if the district court 'selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.'"  *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (*quoting United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)).

When a law sets the minimum sentence for a given crime, the courts' authority to

7

deviate from that amount is limited. Pursuant to 18 U.S.C. § 3553(e), a court may

ignore the statutory minimum if the Government requests a departure based on the

defendant's substantial assistance. Otherwise, the defendant must be eligible for the

so-called "Safety Valve" provision of § 3553(f), which applies only to defendants who,

*inter alia*, have no more than one criminal history point under the Guidelines. Courts

generally hold that 18 U.S.C. § 3553(e) and (f) provide the only bases upon which to

impose sentence below a statutorily-defined minimum. *See, e.g., United States v.

Medley*, 313 F.3d 745, 749 (2d Cir. 2002) ("most circuits have concluded that [the

Sentencing Commission's policy statement on grounds for departure] U.S.S.G. § 5K2.0

. . . does not provide a sentencing court the authority to depart below the mandatory

minimum sentence.") (citing cases); *United States v. Burke*, 237 F.3d 741, 745 (6th

Cir.), *cert. denied*, 532 U.S. 1072 (2001) ("In the absence of one of the exceptions set

out in §§ 3553(e),(f), or such other similar exceptions as Congress may create,

defendants may not be sentenced, by means of a downward departure, to a term of

imprisonment or other punishment below the minimum imposed by the statute under

which they were convicted."); *United States v. Santiago*, 201 F.3d 185, 187 (3rd Cir.

1999) ("Any deviation from the statutory minimum sentence can only be had through the

specific procedures established through 18 U.S.C. §§ 3553(e), 3553(f)").

On appeal, sentences are reviewed for abuse of discretion. *Gall*, 128 S. Ct. at

594 (*citing Booker*, 543 U.S. at 260-62). In the Sixth Circuit, sentences within the

Guidelines range are presumptively reasonable on review. *United States v.

Richardson*, 437 F.3d 550, 553 (6th Cir. 2006); *see also Rita*, 127 S. Ct. at 2462, 2467

(holding that appeals courts may apply a presumption of reasonableness to sentences

8

within the Guidelines, but that sentences outside the range are not presumptively unreasonable).  However, "this rebuttable presumption does not relieve the sentencing court of its obligation to explain to the parties and the reviewing court its reasons for imposing a particular sentence." *Richardson*, 437 F.3d at 554.  Finally, although *Booker* empowered district courts to practice "individualized sentencing within reason," *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008), appellate courts maintain authority to review variances which inappropriately apply § 3553(a) factors.  *See United States v. Davis*, 537 F.3d 611, 618 (6th Cir. 2008).

### A.   Statutory Minimum

The 21 U.S.C. § 851 enhancement filed in August 2007 allowed the Government to seek a mandatory minimum sentence of 20 years for this offense, because of Defendant's 1999 state court conviction for delivery/manufacture of less than 50 grams of a controlled substance.  *See* § 841(b)(1)(A).  The Government filed a second enhancement in July 2008, seeking a mandatory life sentence, but withdrew it before sentencing, in June 2009.

A penalty enhancement under § 841 may be levied only if, before the defendant pleads guilty or goes to trial, the Government files an information with the court and "serves a copy . . . on the [defendant] or counsel for the [defendant]." § 851(a)(1).  The information must be in writing and state the prior conviction relied upon for the enhancement.  *Id.  See also United States v. King*, 127 F.3d 483, 488 (6th Cir. 1997) ("'due process requires that a defendant receive reasonable notice and opportunity to be heard relative to the recidivist charge . . . .'  Section 851 . . . was designed to fulfill this due process requirement.") (*quoting United States v. Gonzalez-Lerma*, 14 F.3d

9

1479, 1485 (10th Cir. 1994)) (other quotation omitted).

If an information is filed, the court must, after conviction but before sentencing, conduct what is commonly referred to as a § 851(b) colloquy. *E.g., United States v. Craft*, 495 F.3d 259, 265-66 (6th Cir. 2007). The colloquy consists of asking the defendant whether s/he admits or denies the prior conviction, and informing that person that unless s/he challenges the prior conviction before sentencing, s/he cannot later invoke it to attack the sentence. § 851(b). However, convictions that occurred more than five years before the filing of the information cannot be challenged; in such cases, the colloquy requirement is moot. § 851(e). *See also United States v. Reed*, 141 F.3d 644, 653 (6th Cir. 1998) (§ 851(e) is "a reasonable limitation on defendants to effectuate the purposes of sentence enhancement for recidivists and to eliminate a host of problems with respect to ancient or destroyed records.") (*quoting United States v. Gonzales*, 79 F.3d 413, 426 (5th Cir. 1996)); *United States v. Hill*, 142 F.3d 305, 313 (6th Cir. 1998) ("neither the statute nor reason 'requires a trial court to adhere to the rituals of section 851(b) where a defendant, as a matter of law [pursuant to § 851(e)], is precluded from attacking the conviction forming the basis of the enhancement information.'") (*quoting United States v. Nanez*, 694 F.2d 405, 413 (5th Cir. 1982) (alteration in *Hill*)); *Craft*, 495 F.3d at 266 (same).

At the sentencing hearing, Defendant acknowledged pleading guilty in January 1999 to delivery/manufacture of less than 50 grams of cocaine. However, Defendant claims he was not given notice of the § 851 enhancement before trial, and only found out about it when reading the PSIR.

The Government contends notice of the enhancement was properly served on

10

Defendant's attorney at the time of filing, in August 2007.  In addition, the Government claims it met with Defendant and his attorney for a *Kastigar* proffer on February 8, 2008. *See Kastigar v. United States*, 406 U.S. 441 (1972).  According to the Government, at that meeting, Defendant was told of the enhancement and that he faced a minimum of 20 years.

Defendant denies being informed of the sentencing enhancement at the February meeting.  Moreover, he contends he was not told about it by his attorney, with whom he had very little contact during the relevant period.

The Sixth Circuit holds that notice to defense counsel suffices to meet the notice requirement of 21 U.S.C. § 851(a)(1).  *United States v. West*, 130 Fed. Appx. 753, 759-60 (6th Cir.) (unpublished), *cert. denied*, 546 U.S. 911 (2005) ("Notice to a party's counsel is constructive notice to the party. . . . [The defendant] has never contended that the certificate of service in the record does not reflect actual service on his attorney of record a week before trial.").  *Accord United States v. Weatherall*, 280 Fed. Appx. 438, 439 (5th Cir. 2008) (unpublished) ("The record indicates that the Government filed the required information prior to trial and served it on [defendant's] counsel of record. Personal service on [defendant] was not required.") (citation omitted).

The Government filed its § 851(a) information on August 9, 2007, together with a certificate of service on Defendant's attorney.  Defendant submitted no affidavit from his attorney denying service.  On its face, this is sufficient to meet the constructive service requirement of *West*.

However, *West* does not lay to rest Defendant's claim that his first attorney failed to tell him about the enhancement.  This allegation is particularly troublesome since, on

11

July 29, 2008, as jury selection was about to begin, the Court dismissed Defendant's attorney for failing to provide adequate representation to his client. Defendant argues that, had he known about the enhancement before trial, he would have pled guilty to avoid a 20-year sentence.

The Sixth Circuit considered a relatively similar case in *Dabelko v. United States*, No. 98-3247, 2000 WL 571957, 2000 U.S. App. LEXIS 9633, at *2 (6th Cir. May 3, 2000) (unpublished). In *Dabelko*, the Government filed a § 851 information seeking a minimum sentence of 20 years against a defendant charged with possession with intent to distribute cocaine. *Id.* at *10. The defendant was tried, convicted, and sentenced to 292 months, much longer than his co-defendants. *Id.* at *2. He appealed, claiming his decision to go to trial was due to his attorney's failure to tell him about the enhancement and its consequences. *Id.* at *5. The defendant argued he would have pled guilty if he had known going to trial would expose him to a minimum of 20 years. *Id.* at *11.

The Sixth Circuit stated that, prior to trial,

> a defendant is entitled to rely on his counsel to make an independent examination of the facts, circumstances, pleadings and law involved and then offer his informed opinion as to what plea should be entered.

*Id.* at *8 (*citing Boria v. Keane*, 99 F.3d 492, 497 (2d Cir. 1996)). The court found there was a reasonable probability that, had trial counsel properly researched the § 851 enhancement and explained its consequences, the defendant might have decided to plead guilty rather than face trial. *Id.* at *12. The court remanded with instructions to conduct an evidentiary hearing on whether counsel provided the defendant with sufficient information to make an informed decision. *Id.*

Contrary to *Dabelko*, there is evidence in the record that Defendant knew the

12

consequences of going to trial.  Defendant may not have known about the enhancement when the information was filed, or at the *Kastigar* proffer in February 2008.  However, he was clearly aware of the Government's intent to seek an increased penalty on July 29, when he declared: "I just now found out . . . that if I get found guilty it's a mandatory life sentence."  The allusion to mandatory life refers to the second § 851 information, which the Government filed on July 23 and did not withdraw until a few weeks before sentencing.  Therefore, Defendant knew he faced an enhanced sentence at least six months before his trial began, in January 2009.

Moreover, after dismissing Defendant's attorney, the Court appointed Martin Crandall to represent him.  Mr. Crandall is an excellent advocate who appeared in this Court on numerous occasions.  At an in limine hearing shortly before trial, Mr. Crandall successfully obtained the exclusion of certain evidence, arguing that the risk of prejudice was especially great because his client faced a mandatory life sentence.  This shows counsel was also aware of the enhancement and its implications for his client.

Defendant did not face trial until six months after acknowledging on the record that he faced an enhanced sentence.  This was ample time and opportunity to consider the feasibility of a plea in lieu of trial.

The Court finds the requirements of § 851 are met, and applies the enhancement.

### B.    Advisory Guidelines

Applying the 2008 edition of the Guidelines, Probation attributes to Defendant a Total Offense Level of 37 and places him in Criminal History Category VI, for a sentencing range of 360 months to life.  The Government argues Defendant's actual

13

Offense Level should be 32, with a Criminal History Category of III, for a range of 151 to 188 months.

The Court begins by verifying that Probation's calculation is correct.  *See Gall*, 128 S. Ct. at 596.  The Court applies the 2008 edition of the Guidelines, as per U.S.S.G. § 1B1.11(a).

### 1.      Total Offense Level

Defendant was convicted of Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, 21 U.S.C. §§ 841(a)(1) and 846 (Count I), and Possession with Intent to Distribute Marijuana and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II).  Due to the amount of marijuana, both counts carry minimum sentences of ten years imprisonment, a $4 million fine, and five years of supervised release.  21 U.S.C. § 841(b)(1)(A).

### a.      Grouping of Offenses

The offense level for Defendant's crimes is determined largely based on the quantity of drugs involved; therefore, both counts must be considered as a group. U.S.S.G. § 3D1.2(d).  The offense level for the group is that corresponding to the aggregate amount of controlled substance.  § 3D1.3(b).

### b.      Base Offense Level

Probation starts with a base offense level of 32, which neither Defendant nor the Government disputes.

The Guideline for conspiracy offenses instructs courts to apply the base offense level and adjustments for the substantive offense.  U.S.S.G. § 2X1.1.  The offenses of

possession with intent to distribute and distribution of a controlled substance under 21 U.S.C. § 841(a)(1) share the same Guideline, U.S.S.G. § 2D1.1. For crimes involving over a ton, but less than three tons of marijuana, the base offense level is 32. § 2D1.1(a)(3), (c)(4).

### c.   Special Characteristics and Other Adjustments

There are no special characteristics to consider in determining Defendant's offense level. Likewise, there are no adjustments for victims, obstruction of justice, or for Defendant's role in the offense. Lastly, Defendant put the Government to its proofs and did not accept responsibility for his actions. Defendant's offense level is 32.

### d.   Career Offender Enhancement

Probation applies the career offender enhancement of U.S.S.G. § 4B1.1 and calculates Defendant's Total Offense Level to be 37. The Government argues the enhancement should not apply, because Defendant had only one prior controlled substance offense when he committed this crime. The Government's premise is correct, but its conclusion is not.

To qualify as a career offender, a defendant must be 18 years old and have at least two prior felony crimes of violence or controlled substance convictions. § 4B1.1(a). The Guidelines define "crime of violence" as a state or federal offense punishable by detention for over one year, and which "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). For career offender determination, prior convictions are counted the same as for criminal history purposes. § 4B1.2 cmt. n.3.

15

A review of Defendant's criminal history shows he was convicted in June 1999 of delivery/manufacture of less than 50 grams of cocaine (see below).  This is Defendant's only prior controlled substance conviction.  However, in July 1999, Defendant was convicted of assault with intent to do great bodily harm less than murder, a felony punishable by up to ten years imprisonment.  Mich. Comp. Laws § 750.84.

When he committed this offense, Defendant had one prior conviction for controlled substance, and one for a crime of violence.  Therefore, the career offender enhancement applies.  § 4B1.2(c).

Defendant's Offense Statutory Maximum for this crime is life in prison.  *See* § 4B1.1(b) & cmt. n.2; 21 U.S.C. § 841(b)(1)(A).  Consequently, his Total Offense Level increases to 37.  U.S.S.G. § 4B1.1(b).

### 2.    Criminal History Category and Enhancements

Probation places Defendant in Criminal History Category VI, based on his status as a Career Criminal Offender.  The Court agrees.

Defendant has three prior adult convictions:

1.    In January 1999, at age 25, Defendant was arrested for delivery/manufacture of less than 50 grams of cocaine; he pled guilty and was sentenced to lifetime probation.  Defendant violated probation once and was discharged in 2005.  This conviction accounts for one criminal history point.  U.S.S.G. § 4A1.1(c).

2.    In June 1999, at age 25, Defendant assaulted his then-girlfriend; he pled nolo contendere to assault with intent to do great bodily harm less than murder, and was sentenced to serve 365 days in jail.  This conviction accounts for two criminal history points.  § 4A1.1(b).

3.    In November 2007, at age 34, Defendant was arrested with 14.8 grams of

16

marijuana, a digital scale and a semi-automatic handgun. Defendant was convicted of possession with intent to distribute, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking offense; he received 168 months. Defendant appealed this conviction on ineffective assistance of counsel grounds. This conviction accounts for three criminal history points. §§ 4A1.1(a), 4A1.2(a) & cmt. n.1.

Defendant also has three prior convictions which do not factor into his Criminal History Category determination, because they occurred outside the applicable time period. § 4A1.2(e)(3).

Probation indicates Defendant also has three pending charges in state court, for failure to appear on underlying charges of: (1) entering without permission; (2) disorderly conduct; and (3) operating without valid insurance.

Defendant's prior countable crimes combine for 6 points, placing him in Criminal History Category III. However, as discussed above, Defendant qualifies as a career offender, and so the Court must apply a Criminal History Category of VI. *See* § 4B1.1(b) ("A career offender's criminal history category in every case . . . shall be Category VI.").

### 3.    Guideline Sentencing Range

Defendant's Total Offense Level is 37. Combined with a Criminal Offense Category of VI, this corresponds to a range of 360 months to life in prison.

### C.    Factors Supporting Departure or Variance

Defendant urges the Court to sentence him below the Guidelines, on grounds that: (1) his classification as a career offender overstates his criminal history; (2) the disparity between his sentence and those of his co-defendants is unwarranted, and thus

17

violates 18 U.S.C. § 3553(a)(6); and (3) even if it survives statutory review, his sentence is so disproportionate compared to his co-defendants' that it offends the Eighth Amendment of the United States Constitution.

The term "departure" refers to the case in which "a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *U.S. v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). By contrast, a variance occurs "[w]hen a court enhances or detracts from the recommended range through application of [18 U.S.C.] § 3553(a) factors." *Id.*

To determine the propriety and extent of a variance, a sentencing court must apply a myriad of factors to the particular circumstances of each case. In addition to the sentencing purposes of 18 U.S.C. § 3553(a)(2), these factors include:

> the nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; the Guidelines sentencing range; any pertinent policy statement by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

*United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008). *See also* 18 U.S.C. § 3553(a)(1), (3)-(7). The court need not expressly state each factor at sentencing, as long as its opinion reflects their consideration. *Mayberry*, 540 F.3d at 518 (*citing United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008)).

### 1.    Over-representation of Criminal History

Defendant requests the Court to depart from the Guidelines because his career offender classification overstates his criminal history. Because the Government erroneously concludes Defendant is not a career offender, it does not address this

18

argument.

A departure can be had under the Guidelines, and it follows that a court can shorten a Guideline range through 18 U.S.C. § 3553(a), where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes."  U.S.S.G. § 4A1.3(b)(1).  *See also United States v. Fletcher*, 15 F.3d 553, 556 (6th Cir. 1994), *overruled on other grounds by Koon v. United States*, 518 U.S. 81, 98-101 (1996) (*as stated in United States v. Jones*, 107 F.3d 1147, 1153 (6th Cir. 1997)).

Defendant argues his career offender designation exaggerates the seriousness of his criminal history.  He emphasizes that the two offenses which caused him to be classified as a career offender occurred ten years ago, in 1999.  The Court also notes that Defendant's controlled substance conviction involved less than 50 grams – about two ounces – of cocaine.

Were it not for his career offender status, Defendant's sentencing range would be 151 to 188 months, the amount corresponding to an Offense Level of 32 and a Criminal History Category of III.  Once the enhancement is applied, the range increases to 360 months to life, adding 17 years to Defendant's minimum sentence.

The Court agrees that Defendant's criminal history is overstated.  Admittedly, Defendant has a substantial criminal record, but two ten-year-old convictions, one for less than two ounces of cocaine, do not justify inflating his minimum sentence by 138%.  *See United States v. Smith*, 278 F.3d 605, 610 (6th Cir. 2002) (holding that the small quantity of drugs involved in prior conviction may justify departing from career offender

19

provision); *Fletcher*, 15 F.3d at 556-57 (affirming downward departure for a defendant whose prior convictions were 15 and six years old, respectively).  Even when factoring the rest of Defendant's criminal history, the Court sees no justification for such an increase.

Defendant's status as a career offender over-represents his criminal history; this factor supports a departure.

### 2.    Unwarranted Disparity in Sentencing

Defendant argues that a sentence within the Guidelines would create a discrepancy between his penalty and those of his co-defendants.  *See* 18 U.S.C. § 3553(a)(6) (urging courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.").  The Government claims this argument is moot, because the law requires a 20-year minimum sentence.

As discussed above, the Government erred in concluding that Defendant is not a career offender.  Since the lower end of Defendant's Guideline range is ten years longer than the statutory minimum, sentencing disparity is a legitimate issue which the Court must entertain.

To date, the Court sentenced eight of Defendant's co-conspirators.  Juan Antonio Herrera, Alfonso Jose Castaneda and Nelson Cruz-Gonzalez were classified as the Level Four laborers, the lowest level of culpability.  They pled guilty to Count One, conspiracy to distribute, and were sentenced to 41, 41 and 60 months of detention respectively.  Clifford Roberson and Lernardo Sain, both Level Three distributors like Defendant, pled guilty to Count One and received 120 months each.  David Carter, also a Level Three distributor, was tried and convicted of Count Two, possession with intent

to distribute, and of an additional count of possessing a firearm in connection with a drug offense; he received 180 months.  Ramon Soria, a Level Two manager, pled guilty to Count One and received 120 months.  Lastly, Costica Bonas, a Level One supplier and the alleged ringleader of the conspiracy, was tried and convicted of Counts One and Two; he received 97 months.

The difference between Defendant's Guideline range and his co-conspirators' sentences is partly the result of two factors.  First, most co-defendants had no prior record and fell into Criminal History Category I.  This allowed several individuals, including Mr. Bonas, to benefit from the Safety Valve provision of 18 U.S.C. § 3553(f). Second, only Messrs. Castaneda and Roberson, who had prior drug convictions, could have received mandatory minimum sentences.  However, they pled guilty and the Government declined to file § 851 enhancements against them.  These factors explain, to some extent, the disparity between Defendant and his co-conspirators.  However, they do not justify so great a difference.

The Court agrees that a Guideline sentence would constitute an unwarranted sentencing disparity.  Neither Defendant's role in the offense nor his criminal history warrants a sentence 15 years greater than Mr. Carter's, or 21 years higher than Mr. Bonas's.  Similarly, the fact that Defendant put the Government to its proofs does not justify detaining him 20 years longer than Mr. Roberson or Mr. Soria.

This factor supports a variance.

### 3.     Adjustment for Role in the Offense

Defendant also claims he was unjustly classified as a Level Three distributor, because his conduct was not different from that of Messrs. Herrera, Castaneda and

21

Cruz-Gonzalez, all of whom were classified as Level Four laborers.  Messrs. Herrera and Castaneda were granted offense level reductions for minor participation in the offense, but Mr. Cruz-Gonzalez was not.

"The burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies."  *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003) (*citing United States v. Martinez*, 181 F.3d 794, 797 (6th Cir. 1999)).  *See also United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006) ("judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury."); *United States v. Mayle*, 334 F.3d 552, 556 (6th Cir. 2003) (*citing United States v. Watts*, 519 U.S. 148, 156 (1997)) ("The Supreme Court has held that application of the preponderance standard at sentencing generally satisfies due process.")

The Government met its burden to show Defendant's involvement exceeded that of a Level Four laborer.  Contrary to Messrs. Herrera, Castaneda and Cruz-Gonzalez, who pled to conspiracy only, the jury found Defendant guilty of possession as well, a conviction supported by the evidence.  Moreover, Rasheeda Powell testified Defendant told her he lost the keys to the U-Haul truck she rented, when in fact, the keys were in his possession when he was arrested.  This supports the Government's assertion that Defendant kept the U-Haul truck for further distribution.

The evidence presented suffices to find, by the preponderance standard, that Defendant was more than a minor participant in the operation.  Hence, he does not qualify for an offense-level reduction.

22

### 4.      Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

Although Defendant does not raise this point, the Court holds that a sentence below the 360-to-life range is also justified in variance terms, to reflect the seriousness of this offense with regard to his prior convictions.

One of the cardinal principles of sentencing law is proportionality, namely the need for a sentence to adequately reflect "the seriousness of the circumstances surrounding the offense and the offender."  *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (*quoting People v. Milbourn*, 435 Mich. 630, 636 (1990)).  This rule is embodied in the requirement that a sentence be "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2).]"  *Id.*  As Judge Cole eloquently stated in his dissent in *United States v. Smith*,

> While not discounting the severity and extent of defendant's many prior encounters with the law, a sentencing court must not lose sight of the particular offense at issue.  While defendant's criminal history is undoubtedly relevant to the sentencing decision, the defendant has already received punishment for his prior crimes.  *Therefore, the nature of the conviction at issue is paramount.*

*Id.* at 474 (Cole, J., dissenting) (emphasis added).

Defendant's past crimes – for which he has already been sentenced – more than double his sentencing range, from 151 to 360 months.  At the same time, because of a prior drug conviction, Defendant faces a statutory minimum of 20 years, seven years more than the 151-month minimum.

The interests of justice and the purposes of 18 U.S.C. § 3553(a)(2) are better served by a sentence which provides punishment proportional to the seriousness of the offense.  The proportionality weighing which the Court must do, requires it to guard

23

against exaggerating the importance of past crimes, compared to the offense of conviction.

Even if Defendant receives the 20-year statutory minimum, over one-third of his sentence will be attributable to his 1999 drug offense.  This is more than enough to account for prior crimes.

### 5.    Other 18 U.S.C. § 3553(a) Sentencing Factors

The other 18 U.S.C. § 3553(a) factors do not support a Guideline sentence. Defendant's personal characteristics do not provide any indication that he deserves, or would better benefit from, spending 30 years in prison.  Finally, for deterrence purposes, there is little indication that a non-Guideline sentence would significantly increase the risk that Defendant or others in his position will commit future crimes of this type.

### D.    Constitutionality of Sentence

Defendant contends a sentence of 20 years or more violates the Eighth Amendment's prohibition on cruel and unusual punishment.  The Court disagrees.

"The Eighth Amendment . . . contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  *Ewing v. California*, 538 U.S. 11, 20 (2003) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  However, the Eighth Amendment "does not mandate strict proportionality between crime and sentence; instead, at most, only sentences that are 'grossly disproportionate' to the crime are prohibited."  *United States v. Olan-Navarro*, 350 F.3d 551, 554 (6th Cir. 2003) (*quoting Harmelin*, 501 U.S. at 1001).

Although it is "clearly established" that gross disproportionality applies to both

24

death and term-of-year sentences, the Supreme Court's jurisprudence on this issue is otherwise hazy. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (noting the "lack of clarity" in Supreme Court cases regarding factors to consider in applying this principle). The Court only indicates that gross disproportionality is "applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73 (*quoting Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment)).

Without further guidance, Defendant submits that Supreme Court precedent requires courts to conduct a two-pronged analysis. The first step, according to Defendant, is to perform "an abstract evaluation of the appropriateness of a sentence for a particular crime." *Pulley v. Harris*, 465 U.S. 37, 42-43 (1984). This "relative proportionality" principle lies at the heart of Congress's admonition that sentences be "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2).]" 18 U.S.C. § 3553(a). The Court considered this type of proportionality in its departure and variance analyses.

Second, Defendant argues courts should consider the principle of "comparative proportionality," which consists of appraising a defendant's punishment in light of sentences received by similarly culpable co-defendants. Defendant argues the Supreme Court recognized comparative proportionality in *Enmund v. Florida*, where two defendants robbed and murdered an elderly couple in their farmhouse. 458 U.S. 782, 784 (1982). Although evidence showed Enmund was sitting at the wheel of the getaway car while his accomplice committed the crime, the jury sentenced both co-defendants to death. *Id.* The Court held the Eighth Amendment did not permit imposing the death penalty on a co-defendant "who aids and abets a felony in the

25

course of which a murder is committed by others but who does not himself kill, attempt

to kill, or intend that a killing take place or that lethal force will be employed." *Id.* at 797.

As the Court explained,

> Enmund did not kill or intend to kill and thus his culpability is *plainly*
> *different* from that of the robbers who killed; yet the State treated them
> alike and attributed to Enmund the culpability of those who killed the
> [victims]. This was impermissible under the Eighth Amendment.

*Id.* (emphasis added). *See also Furman v. Georgia*, 408 U.S. 238 (1972) (holding that

arbitrary and disproportionate imposition of the death penalty violates the Eighth

Amendment).

The comparative proportionality principle was the subject of great debate in the

Sixth Circuit's ruling on *Getsy v. Mitchell*, 495 F.3d 295 (6th Cir. 2007) (en banc), *cert.*

*denied*, 128 S. Ct. 1475 (2008). Jason Getsy was hired by John Santine to kill a former

business associate, Charles Serafino; Getsy and an accomplice broke into Serafino's

house, killed his mother and shot him, leaving him for dead. *Id.* at 300-02. Getsy and

Santine were indicted for aggravated murder and burglary, with several capital

specifications qualifying them for the death penalty. *Id.* at 304. Getsy was tried first,

convicted on all counts, and sentenced to death. *Id.* at 303. Subsequently, another jury

convicted Santine of aggravated murder and burglary; he did not receive the death

penalty. *Id.* at 304.

Getsy appealed, arguing that the disparity between himself and Santine rendered

his death sentence unconstitutionally arbitrary and disproportionate. The Sixth Circuit

initially vacated his death sentence, *Getsy v. Mitchell*, 456 F.3d 575, 598 (6th Cir. 2006),

but reversed in an en banc decision.

The court majority held that Eighth Amendment proportionality is limited to evaluating a defendant's culpability for his crime in relation to his punishment.  *Getsy*, 495 F.3d at 305.  The court specifically disavowed comparative proportionality, stating that the Supreme Court had already rejected the notion in *Pulley v. Harris*, *supra*, and *McCleskey v. Kemp*, 481 U.S. 279 (1987).  Furthermore, the majority emphasized there is no requirement of consistency between verdicts in a single trial, much less in separate trials with different juries.  *Getsy*, 495 F.3d at 307.

In a passionate dissent, Judge Merritt argued the Supreme Court upheld comparative proportionality in both *Enmund* and in *Morrison v. California*, 291 U.S. 82 (1934).  *Getsy*, 495 F.3d at 318.  In *Morrison*, a unanimous Court held that due process prohibits the conviction of one conspirator where his alleged co-conspirator is acquitted, stating: "The conviction failing as to the one defendant must fail as to the other."  291 U.S. at 93; *Getsy*, 495 F.3d at 320.

Judge Merritt also pointed out that *Pulley* did not involve comparisons between co-defendants convicted of the same crime, but between sentences for similar crimes in unrelated cases.  *Getsy*, 495 F.3d at 325.  In *Pulley*, the Court held that the Eighth Amendment does not require "a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases."  465 U.S. at 44.  The same is true of *McCleskey*, where the petitioner challenged Georgia's death penalty statute on racial discrimination grounds, arguing that blacks were more likely to be sentenced to death than whites.  481 U.S. at 291-92. In rejecting his claim, the Court stated: "McCleskey cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not*

27

receive the death penalty." *Id.* at 306-07 (emphasis in original).

Defendant relies on Judge Merritt's dissent in *Getsy* to argue that the prescribed 20-year sentence invariably violates the Constitution. Defendant compares it to the 97 months received by alleged mastermind Costica Bonas, and points to David Carter, whose 180 months includes a 60-month consecutive sentence for firearm possession. Defendant submits the statutory penalty would be grossly disproportionate to those of his co-defendants.

Assuming, for purposes of discussion, that the Sixth Circuit erred by rejecting comparative proportionality in *Getsy*, the Court is not convinced that the difference in sentences between Defendant and his co-conspirators offends the Eighth Amendment.

First, Defendant's statutory minimum sentence is the product of his prior drug and crime of violence convictions, and the Government's decision to seek an enhancement pursuant to 21 U.S.C. § 851. Of the eight co-defendants already sentenced, only Messrs. Castaneda and Roberson had prior convictions which factored into their sentencing. The others, including Ms. Bonas, fell into Criminal History Category I, and were not subject to § 851 enhancements. *Enmund* and *Morrison* did not address the effects of prior offenses on subsequent sentences, and Defendant does not provide, nor has the Court found, cases supporting the notion that sentencing disparities based on criminal history may be unconstitutionally disproportionate.

Defendant's sentence is not disproportionate to Mr. Castaneda's or Mr. Roberson's either. These co-defendants fell into Criminal History Categories II and III, respectively, and like Defendant, they had prior adult drug convictions. Unlike Defendant, however, they pled guilty, and the Government did not seek § 851

28

enhancements.  Defendant elected to put the Government to its proofs, even after receiving notice that it intended to seek mandatory life.

Moreover, the fact that the Government did not seek § 851 enhancements against other co-defendants does not render Defendant's sentence disproportionate *per se*:

> Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect.  Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors.  Any disparity in the maximum statutory penalties between defendants who do and those who do not receive the notice is a foreseeable--but hardly improper--consequence of the statutory notice requirement.

*United States v. Labonte*, 520 U.S. 751, 762 (1997) (citations and footnote omitted).

*See also United States v. Sanchez*, 517 F.3d 651, 671-72 (2d Cir. 2008) (*quoting Labonte*) (holding that discretion to seek § 851 enhancement does not violate separation of powers, and that absent showing of improper motive, an unexplained decision to seek enhancement against only one of several pleading defendants does not violate due process).

Lastly, the cases upon which Defendant relies are fundamentally different from this one.  The difference in *Morrison* was between conviction and outright acquittal, arguably a greater discrepancy than the one complained of here.  Moreover, the disparity at issue in *Getsy* and *Enmund* was no less than the difference between life and death.  There can be no greater sentencing disparity than when two individuals with similar records are convicted of the same crime, and one receives the death penalty

while the other is spared his life.

Even if Judge Merritt is correct in his reading of Supreme Court precedent, to apply the same reasoning here requires a giant leap. Defendant's argument does not support the conclusion that a sentence based on circumstances which trigger a 20-year mandatory minimum is so grossly disproportionate as to violate the Eighth Amendment.

## IV.    CONCLUSION

The statutory minimum for Defendant's offense is 20 years; since the exceptions of 18 U.S.C. § 3553(e) and (f) do not apply, the Court is not at liberty to depart or vary downward from this amount. *See* 21 U.S.C. § 841(b)(1)(A); *Burke*, 237 F.3d at 745.

After considering the factors brought to its attention by Defendant, the Court holds that 240 months is a sentence sufficient to satisfy all 18 U.S.C. § 3553(a) factors. Defendant will serve this sentence concurrently with the 14-year term imposed by Judge Zatkoff in case no. 07-20607. *See* U.S.S.G. § 5G1.3(c) (where defendant is subject to undischarged term of imprisonment, court has discretion to impose concurrent sentence if the offenses are unrelated, and defendant did not commit the second offense while serving a term of imprisonment).

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 7, 2009

30

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 7, 2009.

s/Linda Vertriest
Deputy Clerk