UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 07-cr-20309

vs.        HON. VICTORIA A. ROBERTS

CORDELL SAIN,

        Defendant.

_____

## DEFENDANT'S REPLY BRIEF[1]

There is one issue upon which the parties agree. Mr. Sain's health leaves him vulnerable to serious complications or death if he is infected by the novel coronavirus. As the government notes, Mr. Sain's chronic kidney disease is advanced (Stage 3) and is acknowledged as an extraordinary and compelling reason for compassionate release during this pandemic. In addition, Mr. Sain's respiratory system is compromised. His asthma, chronic bronchitis, and COPD heighten his chances of serious, possibly deadly complications from COVID-19. The questions now before this Court include whether Mr. Sain has exhausted his administrative options with the Bureau of Prisons (BOP), whether he currently presents a danger to the community, and whether the factors in 18

---

[1] The Court should note that undersigned counsel has made repeated efforts to speak with Mr. Sain. No one is answering telephone calls at USP - Atlanta. In fact, undersigned counsel is unable to even leave voice mail. The main number at USP - Atlanta disconnects her before she can record a message. This brief is submitted to the Court because of counsel's respect for the Court, but the Court must understand that it is a brief submitted without consultation with the client. The BOP's inability or refusal to allow contact is a violation of Mr. Sain's right to counsel.

U.S.C. § 3553a weigh in favor of compassionate release.

### 1.   Sain exhausted his administrative appeals within the BOP.

There is no question that Mr. Sain appealed to his warden at the United States Penitentiary in Atlanta (USP-Atlanta) on June 5, 2020.  So far, there has been no determination regarding Mr. Sain's request.  Under the First Step Act, a case becomes ripe for filing the defense motion under the statute when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." The modification is reflected in section 3582(c)(1)(A) which states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable

18 U.S.C, §3582(c)(1)(A)

More than thirty days have passed since the receipt of Mr, Sain's request.  The motion is ripe for review by this Court.

The BOP's failure to give a final determination to Mr. Sain's request for compassionate release should give the Court cause to question to BOP's competence or indifference when it comes to COVID-19.  Mr. Sain's medical conditions fall well

within the BOP's guidelines for compassionate release during the COVID-19 crisis. No response is tantamount to rejection when time is of the essence for a virus that is easily transmitted in the close quarters of BOP prisons. The BOP's inability to respond to an emergency request undermines the government's confidence in the Bureau's ability to maintain social distancing and provide personal protection equipment. Another example of indifference or incompetence is in the BOP's collection of statistical evidence in its own walls. According to bop.gov, there have been no COVID-19 related deaths among staff members at USP - Atlanta.[2] However, USP - Atlanta received nationwide attention when 39-year old case worker, Robin Grubbs succumbed to COVID-19 in April 2020.[3] As noted in the first footnote to this brief, it appears that USP Atlanta is unable to manage telephone contact, much less the care and protection of inmates at its facilities. For Mr. Sain this is alarming. The BOP recently began the transfers of prisoners from jails and prison facilities. USP - Atlanta is one of several prisons, including its facility in Oklahoma City that is used to house prisoners who are transferred between prisons.[4] This function increases the possibility of COVID-19 infections within its walls. Although the government is content to trust the Bureau of Prisons with the care and safety of inmates, that trust appears to be misplaced.

---

[2]https://www.bop.gov/coronavirus/

[3]https://www.cbsnews.com/news/coronavirus-federal-prisons-confirm-first-staff-death-linked-to-covid-19-robin-grubbs-usp-atlanta/

[4]https://en.wikipedia.org/wiki/United_States_Penitentiary,_Atlanta

## 2. Sain does not currently present a danger to the surrounding community and the factors set forth in 18 U.S.C. § 3553a

From all appearances, Mr. Sain is rehabilitated and ready to re-enter society. The BOP evaluated him for purposes of the First Step Act and has deemed him a low risk for recidivism. The BOP's words are supported by its actions. Despite the seriousness of his crimes, Mr. Sain is housed in USP - Atlanta's prison camp. Federal prison camps (FPCs) like the one at the Atlanta penitentiary are minimum-security facilities, which have dormitory housing, and limited or no perimeter fencing. These institutions are work- and program-oriented. Many are located adjacent to larger institutions or on military bases, where inmates help serve the labor needs of the larger institution or base.[5]

Rather than remain focused on his sentencing, the Court is afforded the ability to review the time Mr. Sain has severed and evaluate if its original sentencing goals were met. See e.g. *Pepper v. United States*, 562 U.S. 476, 490-93 (2011)(providing format for evaluating post-sentencing rehabilitation efforts in re-sentencing). The most important consideration under §3553a is the overarching obligation for the Court to impose a sentence "sufficient, but not greater than necessary," to accomplish the goals of sentencing. *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). The question for the Court is whether exposure to the coronavirus would impose a life sentence on Mr. Sain.

Mr. Sain is well aware that the crimes he committed are serious. The specter of illicit narcotics are tearing apart the fabrics of our communities and families. However,

---

[5]https://www.bop.gov/about/facilities/federal_prisons.jsp

the reason for compassionate release, as its name suggests, is to add some degree of humanity to our system of justice.

The Court should also note that the amount of time Mr. Sain has spent in prison is almost 13 years. The length of incarceration sends a strong message that will deter others from committing Mr. Sain's offenses. In addition, his placement in a prison camp indicates that Mr. Sain availed himself of the educational and vocational resources that the BOP is able to provide him. Compassionate release will provide Mr. Sain the ability to properly social distance and access personal protection equipment. This would provide medical care and precautions in the most effective manner possible. See 18 U.S.C. § 3553a(2)(D). Finally, the BOP's evaluation of Mr. Sain for purposes of the First Step Act should assure the Court that the time served by Mr. Sain has been sufficient to protect the community from further crimes.

## CONCLUSION

The government inappropriately requests that the Court evaluate this matter as though it were the day of sentencing almost 13 years ago. In fairness, the Court should review Mr. Sain in the present. His health during the pandemic presents extraordinary circumstances that justify compassionate release. His actions and status in the BOP reflect a person who wisely considered the actions and decisions that took his freedom from him. He is rehabilitated and trusted with the lowest level of confinement available in the Bureau of Prisons. In evaluating whether Mr. Sain is prepared for the "first step" back into society, he is deemed a low risk recidivist. Finally, he presents a plan that gives him stable housing and family support, as he seeks employment.

If the BOP is willing to assign Mr. Sain to a facility that may have no walls, the

Court can be assured he will succeed in society. Mr. Sain respectfully requests that this Honorable Court grant his Motion for Compassionate Release.

        Respectfully Submitted,

        **SMITH MIHAS PLLC**

        /s/ Nicole L. Smith
        Nicole L. Smith, P62475
        Attorney for Cordell Sain
        467 Eureka Road, Suite 1
        Wyandotte, Michigan 48192
        (734) 692-3033
        nlsmith@smithmihas.com

Dated:    August 27, 2020

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that the foregoing document, Defendant's Reply Brief, was served on the parties and the Court on August 27, 2020 though the Court's CM/ECF electronic filing and service system.


                                                /s/ Nicole L. Smith
                                                Nicole L. Smith, P62475
                                                Attorney for Cordell Sain