UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 07-20309
                                       Honorable Victoria A. Roberts

CORDELL SAIN,

    Defendant.
_____/

**<u>ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE [ECF No. 389]</u>**

**I.    INTRODUCTION**

This matter is before the Court on Cordell Sain's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He asks the Court to grant him a compassionate release because his chronic kidney disease, asthma, and chronic obstructive pulmonary disease ("COPD") make him particularly vulnerable to the COVID-19 pandemic.

The Court held a video hearing on the motion on October 6, 2020. Counsel appeared by video; Sain and his mother and stepfather – Ann and Larry Douglass – appeared via telephone. Sain consented to proceed in this manner.

The Court **GRANTS** Sain's motion [ECF No. 389].

## II.   BACKGROUND

In January 2009, a jury found Sain guilty of two drug trafficking offenses: (1) Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting).  The jury found Sain responsible for over one ton of marijuana.

The Court sentenced Sain to 240 months in prison followed by 10 years of supervised release; 240 months was the mandatory statutory minimum sentence due to a sentencing enhancement for being a second-time drug offender under 21 U.S.C. § 851.  Sain began serving his sentence on November 10, 2008.  Including credit for time served pending trial, Sain has served over 154 months (12 years, 10 months) of his sentence.  His projected release date is June 15, 2025.  Using that date, Sain has served approximately 73 percent of his sentence.

Sain is 47 years old with underlying medical conditions of asthma and chronic kidney disease.  Sain alleges that he also has COPD, but his medical records do not support this.  Sain is housed at the federal prison camp at the United States Penitentiary in Atlanta ("USP Atlanta").  Per the Bureau of Prisons' ("BOP") website, federal prison camps are minimum-

security facilities with dormitory housing, a relatively low staff-to-inmate ratio, and limited or no perimeter fencing. They are work- and program-oriented and often provide inmate labor to adjacent BOP institutions and to off-site work programs.

Sain appears to have been a model prisoner. While incarcerated, he has completed 2,678 hours of educational and vocational programs, received his GED, and has no record of any major disciplinary incidents. To accomplish a prison transfer in 2017, the BOP gave Sain a short furlough and allowed him to self-report to his new facility.

In support of his motion, Sain submitted recommendation letters from two officers at USP Atlanta – Officer M. Garry, the Maintenance Foreman; and Officer G. Robinson, the Food Service Supervisor. The letter from M. Garry states:

> I have worked at U.S.P. Atlanta … for approximately 20 years and have supervised thousands of inmates on various work details. During my 20 years, I've developed a unique skillset that helps me better determine which inmates are more likely to have success upon exiting the prison system. Mr. Cordell Sain fits that category exceptionally well. [He] has continuously displayed an eagerness to work and never once has complained about any task assigned to him. He's never been one to shy away from takin on new tasks outside his comfort zone, whereas he's developed into an indispensable worker on my construction detail. His personality . . . is very noteworthy. There's no doubt in my professional opinion that Mr. Cordell Sain has been rehabilitated and would be an asset to any organization that hired him.

[ECF No. 398-2, PageID.4894]. In the second letter, Officer G. Robinson states:

> [Mr. Sain] has displayed a very positive attitude and possess[es] no threat to others. Mr. Sain started off at a medium high security facility [p]rison. Mr. Sain ha[d] good conduct as he worked his way to a low security prison. Mr. Sain has continued good conduct and has worked his way down to an out custody Prison Camp in Atlanta. . . [He] has taken multiple hours of programs to prepare himself for society when he is released. . . . Mr. Sain has great leadership skill[s] and has a great sense of humor and great personality. Mr. Sain mentor's the younger offenders and always show[s] respect in the upmost manner to Staff and his Peers. . . . I believe Sain will be successful in life upon his release, because all he talks about is his future and family.

[ECF No. 398-2, PageID.4895]. Sain also submitted a memo from the Bureau of Prisons ("BOP") which indicates that Sain presents a "low" risk of recidivism.

While Sain has been a model prisoner, he does have a history of criminal offenses. As the government points out, Sain was convicted of possession of brass knuckles in 1990, aggravated assault in 1994 and 1995, delivery of less than 50 grams of cocaine in 1999, and assault with intent to do great bodily harm later in 1999. Additionally, while on bond awaiting trial in this case, Sain was found with marijuana and a gun. He was charged and ultimately convicted in a separate federal case with possession with intent to distribute marijuana and felon in possession of a

4

firearm. The Court ordered Sain's sentence in this case to run concurrent with his sentence in the other federal case. Sain has already completed his sentence for the marijuana and gun charge.

On August 10, 2020, Sain filed a *pro se* motion for compassionate release. Sain requests that the Court grant his motion and re-sentence him to a sentence of time served. Sain proposes to live with his mother and stepfather at their home in Detroit while on supervised release. Sain says they live alone in a three-level, four-bedroom home with plenty of room for social distancing. Sain says his mother can pick him up from USP Atlanta within 24 hours of the Court entering an order for his release. Sain's mother and stepfather are supportive of his release and welcome him into their home, and Sain has located suitable employment at P.D. Uniform Store in Eastpointe.

After Sain filed his motion, the Court appointed him counsel. The government responded to Sain's motion, and Sain's counsel filed a reply brief and a supplemental addendum setting forth Sain's achievements while in prison. It troubles the Court that Sain's appointed counsel, Ms. Nicole Smith, was unable to reach Sain at USP Atlanta to assist her in the preparation of motion papers until after she filed her reply brief. Ms. Smith

5

reports that no one answered the phone and the main number disconnected before she could record a message.

## III. DISCUSSION

The compassionate release statute allows the Court to modify a defendant's term of imprisonment if: (1) he fully exhausts all administrative remedies; (2) he shows both "extraordinary and compelling reasons warrant such a reduction [or release]" and that the reduction or release is consistent with" the Sentencing Commission's policy statements; (3) he is not a danger to any other person or the community; and (4) the factors in 18 U.S.C. § 3553(a) support the reduction or release to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A)(i); United States Sentencing Guidelines Manual ("USSG") § 1B1.13 cmt. n.1; *United States v. Austin*, No. 15-20609, 2020 WL 2507622, at *1 (E.D. Mich. May 15, 2020).

### A. Sain Exhausted Administrative Remedies

A defendant wishing to file a compassionate release motion must first satisfy the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("[A] prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must 'fully exhaust[ ] all administrative rights to appeal' with the

prison or wait 30 days after his first request to the prison." (quoting 18 U.S.C. § 3582(c)(1)(A))).

The government says Sain did not satisfy § 3582(c)(1)(A)'s mandatory exhaustion requirement. The government acknowledges that Sain submitted a compassionate release request to the warden of his facility on June 4, 2020. However, it says the request was returned to Sain as incomplete, and he "failed to pursue the next administrative step which would have been to file an administrative appeal."

The Court disagrees with the government and finds that Sain satisfied the mandatory exhaustion requirement under § 3582(c)(1)(A). Before a defendant can file a compassionate release motion, he must either "'fully exhaust[ ] all administrative rights to appeal' with the prison *or* wait 30 days after his first request to the prison." *Alam*, 960 F.3d 831, 833-34 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). While Sain did not fully exhaust all administrative rights to appeal with the prison, he did wait 30 days after he sent his request to the prison before filing his motion.

Thus, Sain satisfied § 3582(c)(1)(A)'s exhaustion requirement, and his motion is properly before the Court.

Additionally, although the parties do not discuss it and it is not relevant to the outcome, Sain's compassionate release request to the

7

warden was not incomplete. The warden's response to Sain says Sain failed to indicate a proper category for compassionate release and that COVID-19 was not a proper "extraordinary and compelling circumstances" category. However, in addition to mentioning COVID-19 in his request, Sain listed his medical conditions as extraordinary and compelling circumstances and raised how his conditions placed him at higher risk for severe illness from COVID-19.

### B. Extraordinary and Compelling Reasons Exist

Section 1B1.13 of the Sentencing Guidelines is the "applicable policy statement" with which the Court must comply when considering a request for compassionate release. Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of the following four categories of "extraordinary and compelling reasons": (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the BOP. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1.

Sain says extraordinary and compelling reasons exist for his release because he is at significant risk of contracting and developing severe

complications from COVID-19 due to his underlying medical conditions and the heightened risk the pandemic poses to prisoners.

The government acknowledges that Sain's chronic kidney disease (stage 3) places him at a higher risk of severe illness from COVID-19 and that his asthma may place him at a higher risk of severe illness from COVID-19. Based on this, the government concedes that Sain's medical conditions satisfy the initial eligibility criteria for compassionate release under USSG § 1B1.13 cmt. n.1 – i.e., Sain's medical conditions constitute an extraordinary and compelling reason for release.

Nevertheless, the government says that "[a]lthough the average person might have a higher risk of contracting or developing complications from COVID-19 in prison than if released," considering "Sain's repeated history of failing to comply with court orders, it seems that he would be unable or unlikely to abide by release restrictions and is thus more likely than most people to expose himself and innocent people to COVID-19." [ECF No. 393, PageID.4769-70 (emphasis omitted)].

The Court acknowledges Sain's past failures to comply with bond and probation conditions. However, those instances occurred more than 13 years ago, when Sain was relatively young. Sain appears to have matured in prison; he has completed numerous educational and vocational

programs, received his high school diploma, and has been a model prisoner – working his way from a medium-security facility to a minimum-security prison camp. Sain also was given furlough and allowed to self-report for a prison transfer in 2017 without issue. The Court believes that Sain will comply with social distancing guidelines to minimize the risk of contracting and/or spreading COVID-19.

Sain demonstrates extraordinary and compelling reasons exist for his release under USSG § 1B1.13(1)(A) & cmt. n.1(A).

### C. Sain is Not a Danger to the Community

As set forth above, the Sentencing Guidelines limit the availability of compassionate release under § 1B1.13 to non-dangerous defendants. USSG § 1B1.13 cmt. n.1; *Austin*, 2020 WL 2507622, at *1. An evaluation of dangerousness in this context requires a comprehensive view of community safety – "a broader construction than the mere danger of physical violence." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989).

The government says Sain's offense and criminal history make him a danger to the community because he is a violent, career criminal who has been convicted of a gun offense and multiple drug and assault offenses.

10

The Court finds that Sain is not a danger to the community. While Sain has a history of criminal offenses, he committed all but the one in this case and the other marijuana and gun charge in 1999 or earlier, when he was 25 years or younger. Neither federal case from 2007 involved violence, and although "drug trafficking is a serious offense that, in itself poses a danger to the community," *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010), "drug dealers do not necessarily pose [an] immediate risk of serious violence" in all circumstances, *see id.*

Sain has not committed a violent offense for nearly 22 years, and he has been a model prisoner who – according to Officers Garry and Robinson – "has been rehabilitated," "is likely to have success upon exiting the prison system," "show[s] respect … to [prison] Staff and his Peers," and is "no[t a] threat to others." [ECF No. 398-2, PageID.4894-95].

The BOP also appears to believe that Sain is not a danger to others: it classifies him as a minimum-security threat by placing him in a prison camp with limited or no perimeter fencing; it granted him furlough to self-report to his new facility in 2017; and the BOP indicated that Sain presents a low risk of recidivism.

Additionally, Sain offers a release plan that should help him re-enter society productively; he plans to live with his parents and has already secured gainful employment.

The government asks the Court to view Sain in the same light as if it was 2007. But Sain has not been in a time bubble for nearly 13 years, and *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), allows the Court to consider post-sentencing rehabilitation efforts in re-sentencing.

Things have changed, and Sain appears to have taken advantage of the vocational and educational programs available in prison to help him rehabilitate.

The Court finds that Sain is not a danger to the safety of any person or the community.

### D. The § 3553(a) Sentencing Factors Do Not Make Release Inappropriate

The final issue is whether the § 3553(a) factors weigh against granting Sain a compassionate release. *See United States v. Kincaid*, 802 Fed. Appx. 187, 188 (6th Cir. 2020).

The government says they do. It says the nature and circumstances of the offense were incredibly dangerous because they involved unloading a ton of marijuana from a secret compartment in a semi-trailer, and because one of Sain's co-conspirators carried a loaded gun. The

government says Sain's continued incarceration is necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for a serious offense by a career offender, to deter others from committing such offenses, and to protect the public from further crimes by Sain.

    The Court has already addressed the need to protect the public from Sain. Given Sain's clean prison disciplinary record, "incarceration is unnecessary 'to protect the public from further crimes of the defendant.'" *See United States v. Brown*, -–– F.Supp.3d at –––, 2020 WL 2091802, at *10 (S.D. Iowa Apr. 29, 2020) (quoting § 3553(a)(2)(C)).

    The Court agrees that the nature and circumstances of Sain's offense are serious, and that the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence are important. However, Sain has already served approximately 13 years in prison – a substantial punishment that accounts for each of these important factors. Using Sain's projected release date, this amounts to over 73 percent of his sentence. This term of imprisonment is longer than most, if not all, of his co-conspirator's sentences.

Moreover, "[i]ncarceration . . . is not the only kind of sentence available." *Brown*, 2020 WL 2091802, at *10 (citation and internal quotation marks omitted). To the contrary, "[n]oncustodial sentences also curtail prized liberty interests and the Defendant always faces the harsh consequences that wait if he violates the conditions attached to such a sentence." *Id.* (citation and internal quotation marks omitted).

Finally, given Sain's "extensive use of prison programming, the only thing left 'to provide the defendant with needed education or vocational training' is to pursue an actual vocation." *Brown*, 2020 WL 2091802, at *10 (citing U.S.C. § 3553(a)(2)(D)). While in prison, Sain achieved his high school diploma, completed numerous vocational and educational programs, has consistently "displayed an eagerness to work," "developed into an indispensable worker" on several different work details, and "mentor[ed] the younger offenders." He furnishes certificates bestowed on him in recognition of accelerated reading, craft skills, typing, artistic talent, courses in real estate and the stock market, parenting skills, conflict resolution, attendance at job fairs, and completion of violence prevention, relapse, drug education, anger management, and leadership courses.

Other courts have considered similar accomplishments by an inmate sufficient to establish his or her rehabilitation in favor of a sentence

14

reduction. *See United States v. Redd*, 444 F. Supp. 3d 717, 729 (E.D. Va. 2020) (finding sentence reduction proper where inmate "demonstrated a commitment to self-improvement, devoting hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibiting solid work habits, caring for mental health inmates, and in the process exceeding his supervisor's expectations across most, if not all, areas of work"); *United States v. Parker*, No. 98-CR-00749, 2020 WL 2572525, at *11 (C.D. Cal. May 21, 2020) (collecting cases).

The overarching § 3553 consideration is that in the end, the Court is to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of sentencing. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Considering all of the above – and taking particular note of the glowing recommendation letters submitted by two prisoner officers – the Court finds that the § 3553 factors weigh in favor of Sain's release.

### IV. CONCLUSION

For the reasons above, the Court **GRANTS** Sain's motion for compassionate release.

Under 18 U.S.C. § 3582(c)(1), the Court "may reduce [Sain's] term of imprisonment (and may impose a term of probation or supervised release

with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A).

The Court **REDUCES** Sain's term of imprisonment to **TIME SERVED**.

The Court **VACATES** the prior term of supervised release imposed. The Court will enter an Amended Judgment with the new term, and relevant conditions, of supervised release.

The government says the Court should stay its order pending any appeal by the government and it should require that Sain be subjected to a 14-day quarantine before release. The Court declines to stay this Order and declines to require that Sain quarantine for 14 days before release. However, once Sain arrives at his mother's home, he must quarantine there for 14 days.

**IT IS ORDERED**.

s/ Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated: October 6, 2020